(836 P.2d 19)

No. 66,885

LEO J. MINER, *Appellant,* v. M. BRUENGER & COMPANY, INC.; TRAVELERS INSURANCE COMPANY; and/or KANSAS WORKERS COMPENSATION FUND, *Appellees.*

Opinion filed June 26, 1992.

*Laura B. Shaneyfelt*, of Wichita, and *Fred A. Johnson*, of Busch, Johnson, Wirth & Mank, of Wichita, for appellant.

*William P. Tretbar*, of Fleeson, Gooing, Coulson & Kitch, of Wichita, for appellees M. Bruenger & Co. and Travelers Insurance Company.

*Edward D. Heath, Jr.*, of Wichita, for appellee Kansas Workers Compensation Fund.

Before PIERRON, P.J., Gernon, J., and DONALD L. WHITE, District Judge Retired, assigned.

GERNON, J.: This is a workers compensation appeal. The trial court ruled that Leo J. Miner had a 30% permanent partial general bodily disability. The court also computed the amount of credit the Workers Compensation Fund (Fund) was entitled to receive pursuant to K.S.A. 44-510a, which provides for a reduction in compensation for prior compensable permanent injuries when a second injury which is compensable occurs. Miner appeals both rulings. We affirm.

## FACTS

Miner was employed as a truck driver by M. Bruenger & Co., Inc. (MBC). On the day of this injury, October 5, 1987, Miner "put [his] truck in the ditch" at one of his stops. He got the truck out and continued on his route. Miner noticed pain in his lower back when the road was rough. He advised MBC that his injury was so painful that he could not continue to drive. MBC directed Miner to pick up a load near Detroit and haul it to Oklahoma City. Miner picked up the load and took it to Wichita, although the back pain forced him to stop frequently. After Miner returned to Wichita, he was fired for having driven his truck into the ditch.

## PRIOR INJURY

Miner had previously injured his lower back while employed

by Earp Meat Company in November of 1986. Dr. Pollock, an orthopedic surgeon, treated Miner and eventually operated on him. This surgery produced less than ideal results. In June of 1987, despite Miner's complaints of pain, Dr. Pollock released him to return to work.

Miner had a 20% permanent partial impairment as a result of the 1986 injury. Miner received temporary total disability benefits of $5,398.68 and a lump sum payment of $61,500.

Miner's testimony and Dr. Pollock's testimony are not in harmony as to whether any restrictions were placed on Miner as a result of the 1986 injury. Miner testified Pollock placed no restrictions upon discharge. Pollock testified he recommended "no lifting at all and no unloading."

## SECOND INJURY

Dr. Pollock testified that the second injury resulted in an increase of Miner's functional impairment from 20% to 25-30% of the body as a whole.

An administrative law judge found that Miner had sustained a 60% permanent partial general bodily disability and assessed the entire liability to the Fund. The administrative law judge found the second injury to be a new and compensable injury, stemming from either an aggravation of a preexisting condition or a new injury as a result of a preexisting condition. The administrative law judge's ruling was affirmed by the director.

The Fund petitioned for judicial review, arguing that the award was not supported by the evidence. The district court found Miner was entitled to a 30% permanent partial general bodily disability, after finding that Miner's vocational expert, Jerry Hardin, "failed to consider the limitations and restrictions on the claimant's physical abilities which were attributable to the claimant's prior injury and were present before the claimant was ever hired by respondent."

## DISTRICT COURT'S FINDINGS

The court agreed with the administrative law judge "that the extent to which the prior disability contributed to the present disability was 100 percent." The court then concluded that, pursuant to K.S.A. 44-510a, the Fund was entitled to a credit of $156.43 per week. To arrive at the amount of the credit, the

court divided the $61,500 amount paid in the first claim by 393.14, the number of weeks Miner was eligible to receive permanent partial disability benefits in the prior claim. Miner appeals.

### FUNCTIONAL IMPAIRMENT RULING

The standard of review in workers compensation cases is well settled. Kansas case law allows the district court a trial de novo on the record and, although the court is bound by the agency record, the district court has the jurisdiction and the duty to make an independent adjudication of the facts and the law. *Reeves v. Equipment Service Industries, Inc.*, 245 Kan. 165, 171, 176, 777 P.2d 765 (1989). The district court has full power to grant or refuse compensation and to increase or diminish any award as justice requires. See *Gawith v. Gage's Plumbing & Heating Co., Inc.*, 206 Kan. 169, 171, 476 P.2d 966 (1970).

An appellate court's scope of review in a workers compensation case is as follows:

"In workers' compensation cases, the scope of review by an appellate court is to determine whether the district court's judgment is supported by substantial evidence. The evidence is viewed in the light most favorable to the party prevailing below and if there is substantial evidence to support the district court's factual findings, the appellate court has no power to weigh evidence, or reverse the final order of the district court. [Citation omitted.] The term 'substantial evidence' when applied to workers' compensation cases means evidence that possesses something of substance and relevant consequence or evidence that furnishes a substantial basis of fact from which the issues presented can be reasonably resolved. [Citation omitted.]" *Baxter v. L. T. Walls Constr. Co.*, 241 Kan. 588, 591, 738 P.2d 445 (1987).

The burden of proof is on the claimant to establish his or her right to an award of compensation, and in reaching its decision, the trier of fact shall consider the whole record. K.S.A. 1991 Supp. 44-501(a).

Miner contends the court erred by rejecting Jerry Hardin's testimony in its entirety. He argues that, because Hardin's testimony was uncontroverted, the court was bound to accept his opinion regarding Miner's work-related disability.

Dr. Pollock, Miner's treating physician, testified that the aggravation of Miner's preexisting condition resulted in an increase of his functional impairment from 20% to 25-30% of the body as

a whole. Miner next brought in Jerry Hardin, a vocational expert, to testify regarding the extent of work disability attributable to the injury. Hardin testified that Miner's ability to perform work on the open labor market and to earn a comparable wage was reduced 53% to 68% as a result of the injury.

Hardin stated that, after Miner's second injury, he was only able to perform selective, sedentary types of jobs. Miner has never held such a position; all of his previous jobs were in heavy or very heavy work. However, he completed a computer programming and operations course in 1989 at the Bryan Institute in Wichita, which helped his employability somewhat but did little to provide him with a comparable wage. Hardin also stated that, in his opinion, Miner was unlikely to find employment in the local market and, even if he did, he would not be employed at a wage comparable to his previous position.

On cross-examination, MBC's attorney questioned Hardin as to whether he assumed Miner "was in good health and restriction free prior to the [second] injury." Hardin replied as follows:

"No, I had known about the previous injury from reading the doctors' reports and talking to Mr. Miner but to gain the percentage of disability, in my opinion, I had to see Mr. Miner as able to be a driver and also to load and unload as much as 125 pounds or better which would cover all the categories through the very heavy categories because that's what he did before the injury. That was a part of the work that he was doing. So I had no limitations that lowered my overall picture of him as being a hundred percent able to do that job."

Hardin did not consider any permanent restrictions on Miner from the previous injury when he determined his work-related disability following the second injury. He stated that Dr. Pollock made no permanent restrictions on the claimant's activities after the first injury, and that the doctor's recommendations were too general.

While both the administrative law judge and the director accepted Hardin's testimony, the district court did not. The court stated as follows:

"With respect to the issue of permanent partial disability, the Court has considered the testimony of the claimant's vocational expert, Jerry Hardin, and finds said testimony unpersuasive. Specifically, it appears that in arriving at his opinions, Mr. Hardin failed to consider the limitations and restrictions on the claimant's physical abilities which were attributable to the claimant's

prior injury and were present before the claimant was ever hired by respondent. As a result, Mr. Hardin's opinions do not accurately reflect the reduction in the claimant's ability to obtain work in the open labor market and to earn a comparable wage which can be attributed to this injury."

The court then reduced claimant's permanent partial disability rating from 60% to 30%.

In addition, Dr. Pollock testified that his release of Miner to return to work was based on Miner's statement that he was in "desperate financial straits." Pollock recommended no lifting and limited bending and twisting. Miner admitted Pollock told him he should not do the amount of lifting required at the job where the first injury occurred. Also, Pollock wrote to Miner's attorney a month before the second injury that Miner's "prognosis . . . is a bit limited, and . . . he will probably have to go back to sedentary work."

We conclude there was substantial competent evidence to support the trial court's decision.

### CREDIT TO FUND

Miner contends the district court miscalculated the overlap period and, as a result, allowed the Fund too much credit pursuant to K.S.A. 44-510a.

The statute provides that, if an employee has previously received compensation and then suffers a later injury, compensation payable for the later injury shall be reduced by the percentage of contribution that the prior disability contributed to the overall disability following the later injury. K.S.A. 44-510a(a). The statute further states:

"Any reduction shall be limited to those weeks for which compensation was paid or is collectible for such prior disability and which are subsequent to the date of the later injury. The reduction shall terminate on the date the compensation for the prior disability terminates or, if settled by lump sum award, would have terminated if paid weekly under such award and compensation for any week due after this date shall be paid at the unreduced rate. Such reduction shall not apply to temporary total disability, nor shall it apply to compensation for medical treatment."

K.S.A. 44-510a(b) provides: "The percentage of contribution that the prior disability contributes to the later disability shall be applied to the money rate actually collected or collectible for the prior injury and the amount so determined shall be deducted

from the money rate awarded for the later injury." This reduced amount of compensation serves as the total amount payable during the 415-week period provided in K.S.A. 1991 Supp. 44-510e(a). K.S.A. 44-510a.

In the present case, the district court found that the Workers Compensation Fund was responsible for 100% of all benefits paid because the Fund had notice of Miner's handicap at the time he was hired by MBC. See K.S.A. 1991 Supp. 44-567(b). The court also found that "the prior disability contributed to the present disability . . . 100 percent, which is consistent with the testimony of the treating physician that the injury involved in this case would not have occurred but for the claimant's pre-existing condition." Miner concedes that a credit should be allowed and that the extent to which the prior disability contributed to the present disability was 100%.

The district court calculated the credit as follows. Miner was paid 21.86 weeks of temporary total disability for the prior claim, leaving him eligible for 393.14 weeks of permanent partial disability benefits (415 − 21.86 = 393.14). In addition to the temporary benefits paid, Miner was awarded a lump sum of $61,500 for permanent partial disability. The court reasoned:

"The Fund is entitled to a credit for each week in which the claimant would have received permanent partial disability benefits as a result of the prior claim, had that matter proceeded to an award, to the extent said weeks overlap the weeks of permanent partial disability benefits to which the claimant is entitled in this case."

The court divided $61,500 by 393.14, the number of weeks Miner was entitled to receive permanent partial disability benefits in the prior claim, to reach a credit of $156.43 per week.

The court next determined that the credit would apply to the first 279.57 weeks of permanent partial disability benefits Miner is entitled to from the second injury. The court reached this figure by adding up the number of weeks which had passed from the date of the injury in the prior claim through the last day for which temporary total benefits were paid on the second injury (7/2/89), and then deducting this number from 415. To demonstrate:

| | |
|---|---|
| 21.86 | (weeks ttd paid on first claim) |
| 22.57 | (weeks until second injury) |
| + 91.00 | (weeks ttd paid on second claim) |
| 135.43 | |

| | |
|---|---|
| 415.00 | |
| − 135.43 | |
| 279.57 | (weeks of overlap where credit applicable) |

Temporary total disability benefits are not subject to the credit reduction. K.S.A. 44-510a(a).

Miner argues the court should have divided $61,500 by the maximum amount he could have received per week had the award been distributed weekly, instead of one lump sum. Miner states that the maximum weekly compensation he could have received under the prior claim was $247 per week, but this amount does not appear anywhere in the record. Following his calculations, $61,500 divided by 247 equals 249 weeks; thus, the entire award could have been paid off in 249 weeks instead of stretching it over 393.14 weeks as the district court did.

From the 249 weeks figure, the same reductions would be made for the periods when temporary total disability was paid and for the weeks preceding the second injury. Thus,

| | |
|---|---|
| 21.86 | (weeks of ttd) |
| + 249.00 | (weeks of ppd) |
| 270.86 | (total period benefits payable for first claim; not 415 weeks) |

| | |
|---|---|
| 21.86 | (weeks of ttd paid on first claim) |
| 22.57 | (weeks before second injury) |
| + 91.00 | (weeks of ttd paid on second claim) |
| 135.43 | (weeks when credit does not apply) |

| | |
|---|---|
| 270.86 | |
| − 135.43 | |
| 135.43 | (weeks of overlap using claimant's calculations) |

The question at issue is how the amount of credit and/or num-

ber of weeks to which the credit applies should be determined when the prior injury is resolved by way of a lump sum settlement.

In *Brozek v. Lincoln County Highway Dept.*, 10 Kan. App. 2d 319, 327, 698 P.2d 392 (1985), the court stated that "the fact that the settlement [from the prior claim] is not structured in weekly payments should not deprive the Fund of the right to a credit for overlapping disabilities."

The specific language of the statute provides that "[t]he reduction shall terminate on the date the compensation for the prior disability terminates or, if settled by lump sum award, would have terminated if paid weekly under such award." K.S.A. 44-510a(a). Spreading the lump sum over the entire 393.14-week period seems logical under the statute. The district court assumed that compensation benefits for the claimant's prior claim would have terminated 415 weeks from the date of the first injury. This assumption comports with the 415-week limit provided in K.S.A. 1991 Supp. 44-510e(a). Moreover, there is no indication that the $61,500 amount was required to have been paid at the maximum rate of $247 per week had the amount not been paid in a lump sum.

Miner asserts that workers compensation statutes are to be liberally construed to effect legislative intent and to award compensation to the worker where it is reasonably possible to do so. See, e.g., *Poole v. Earp Meat Co.*, 242 Kan. 638, 643, 750 P.2d 1000 (1988). He contends the district court's construction of K.S.A. 44-510a is the strictest possible, which flies in the face of the liberal construction that is to be given workers compensation statutes.

This liberal construction rule was altered by the legislature in 1987, when subsection (g) was added to 44-501. The amended version of the statute provides:

"It is the intent of the legislature that the workers compensation act shall be liberally construed for the purpose of bringing employers and employees within the provisions of the act to provide the protections of the workers compensation act to both. The provisions of the workers compensation act shall be applied impartially to both employers and employees in cases arising thereunder." K.S.A. 1991 Supp. 44-501(g).

Based on this new language, Miner should not be automatically entitled to the most personally advantageous calculation under K.S.A. 44-510a(a).

Affirmed.