(872 P.2d 303)
No. 69,771

PAULA M. GRIZZLE, *Claimant,* v. GOTT CORPORATION, *Appellee,* and AMERICAN MOTORISTS INSURANCE CO., *Appellee,* v. KANSAS WORKERS COMPENSATION FUND, *Appellant.*

—

Opinion filed December 17, 1993.

*John Hayes* and *Matthew L. Bretz,* of Gilliland & Hayes, P.A., of Hutchinson, for the appellant Kansas Workers Compensation Fund.

*Stephen M. Kerwick* and *Frederick L. Haag,* of Foulston & Siefkin, of Wichita, for the appellees Gott Corporation and American Motorists Insurance Company.

Before BRAZIL, P.J., LEWIS, J., and JOHN W. WHITE, District Judge, assigned.

LEWIS, J.: The Kansas Workers Compensation Fund (Fund) appeals from a decision assessing it with 100 percent of the liability in this compensation action. We affirm.

Paula Grizzle (claimant) injured her right wrist in 1990 while employed by the appellee Gott Corporation (respondent). This injury ultimately resulted in carpal tunnel surgery. After that surgery, claimant returned to work for respondent in a different capacity.

In March 1990, following her return to work, claimant suffered another injury to her right shoulder. This injury occurred as she was in the course of her duties with respondent, attempting to pull a pallet of boxes off the top of another pallet.

As a result of her second injury, claimant was unable to return to work within her restrictions and underwent vocational rehabilitation.

Claimant instituted this workers compensation action after the second injury. The administrative law judge made a 30 percent permanent disability award in favor of claimant and assessed the Fund with 50 percent of the liability for paying the award. The Director of Workers Compensation reduced the disability awards to claimant and reduced the liability of the Fund to zero. The trial court increased the work disability award to claimant to 45 percent and assessed the Fund with 100 percent of the responsibility of paying that award.

The Fund appeals the assessment of 100 percent responsibility for payment of the award. There is no issue as to claimant's degree of disability or the amount of her award. In fact, claimant has no interest in this appeal and did not file a brief or make an appearance.

## SCOPE OF REVIEW

Our scope of review in a workers compensation case requires that we view the evidence in a light most favorable to the prevailing party and that we determine whether the trial court's findings are supported by substantial competent evidence:

" 'In workers' compensation cases, the scope of review by an appellate court is to determine whether the district court's judgment is supported by

substantial evidence. The evidence is viewed in the light most favorable to the party prevailing below and if there is substantial evidence to support the district court's factual findings, the appellate court has no power to weigh evidence or reverse the final order of the district court. [Citation omitted.]' " *Miner v. M. Bruenger & Co., Inc.*, 17 Kan. App. 2d 185, 188, 836 P.2d 19 (1992).

"We have defined the term 'substantial evidence' in the context of workers compensation cases to mean 'evidence possessing something of substance and relevant consequence and carrying with it fitness to induce conviction that the award is proper, or furnishing substantial basis of fact from which the issue tendered can be reasonably resolved.' [Citation omitted.]" *Angleton v. Starkan, Inc.*, 250 Kan. 711, 716, 828 P.2d 933 (1992).

On this appeal, the ultimate issue is whether the trial court's findings were supported by substantial competent evidence. The Fund argues that the evidence did not support the factual finding of the trial court that claimant was a handicapped employee with respect to her right shoulder or that her carpal tunnel syndrome contributed to her shoulder injury. As indicated above, our scope of review on an issue of this nature is rather limited.

## HANDICAPPED EMPLOYEE

K.S.A. 44-566(b) defines a "handicapped employee" as follows:

" 'Handicapped employee' means one afflicted with or subject to any physical or mental impairment, or both, whether congenital or due to an injury or disease of such character the impairment constitutes a handicap in obtaining employment or would constitute a handicap in obtaining reemployment if the employee should become unemployed and the handicap is due to any of the following diseases or conditions:

. . . .

(15) Loss of or partial loss of the use of any member of the body;

. . . .

(17) Any other physical impairment, disorder or disease, physical or mental, which is established as constituting a handicap in obtaining or in retaining employment."

Certainly claimant is handicapped in the sense that her impairment is a handicap in obtaining employment or reemployment. This seems to be evident from the fact that claimant was unable to continue her employment with the respondent and has undergone vocational rehabilitation.

An employer is relieved of liability for compensation awarded to a handicapped worker under certain circumstances. In the event the employer is relieved of this liability, the responsibility

is assessed either partially or totally to the Fund by K.S.A. 1992 Supp. 44-567(a):

"An employer who operates within the provisions of the workers compensation act and who knowingly employs or retains a handicapped employee, as defined in K.S.A. 44-566 and amendments thereto shall be relieved of liability for compensation awarded or be entitled to an apportionment of the costs thereof·as follows:

(1) Whenever a handicapped employee is injured or is disabled or dies as a result of an injury and the director awards compensation therefor and finds the injury, disability or the death resulting therefrom probably or most likely would not have occurred *but for the preexisting physical or mental impairment of the handicapped employee*, all compensation and benefits payable because of the injury, disability or death shall be paid from the workers' compensation fund.

(2) Subject to the other provisions of the workers compensation act, whenever a handicapped employee is injured or is disabled or dies as a result of an injury and the director finds the injury probably or most likely would have been sustained or suffered without regard to the employee's preexisting physical or mental impairment but the resulting disability or death was contributed to by the preexisting impairment, the director shall determine in a manner which is equitable and reasonable the amount of disability and proportion of the cost of award which is attributable to the employee's preexisting physical or mental impairment, and the amount so found shall be paid from the workers' compensation fund." (Emphasis added.)

The statute requires that the employee must knowingly employ or retain the handicapped employee. This is not an issue in this case. The record shows that, after claimant's first injury, respondent filed a Form 88 Notice of Handicapped Employee with the appropriate state officials. Respondent's records clearly show that, in retaining claimant after her first injury, respondent believed it was "knowingly" retaining a handicapped worker.

The Fund's liability depends upon whether claimant's current disability would not have occurred but for her preexisting physical impairment. On this issue, the evidence was somewhat conflicting. However, the trial court settled this conflict by adopting the testimony of Dr. Ernest R. Schlachter as controlling. This is a decision peculiarly within the province of the finder of fact, and we have no authority to substitute our judgment for that of the trial court in resolving conflicts in the evidence.

Dr. Schlachter examined claimant after her second injury. His examination concluded that claimant had suffered an aggravation of her original injury. He concluded she would not have suffered

this aggravation but for the preexisting condition that claimant suffered in her right arm following her original first injury:

"Q. And you determined, then, that she had had an aggravation or a further worsening of her earlier condition?

"A. Yes, sir.

"Q. And you stated at the conclusion of your report that she would not have had that aggravation, but for the preexisting condition that she had had in her right arm following her original first injury. Am I correct in that?

"A. Yes, sir.

"Q. What is the basis for your opinion that this would not have occurred, but for her preexisting condition?

"A. It's based upon the assumption that she was using her arm in an abnormal fashion to protect her hand, and she would not have sprained her shoulder, gotten the tendonitis, and had she been able to use her right arm and in—in a normal fashion, if she had sprained her shoulder, gotten tendonitis, it should have gotten well.

"Q. Okay. And is this also based on her description of the accident to you?

"A. Yes, sir."

This provides substantial competent evidence to support the trial court's conclusion that claimant was a handicapped employee.

The Fund argues that the evidence was not sufficient. It points out that claimant testified she did not have any problems with her right shoulder prior to March 20, 1990. It further relies on the testimony of Dr. Garrett Watts that she had no preexisting condition in her right shoulder or in any portion of her body which was causally related to her right shoulder bursitis. Finally, the Fund seizes on the fact that Dr. Schlachter did not place any restriction or limitation on claimant with regard to her using her right arm over her head.

We see no merit in the Fund's argument. There is no requirement in the statute that the handicap must be of the same nature as the subsequent injury. The statute only requires that the injury would not have occurred but for the preexisting physical impairment of the handicapped employee or that the preexisting physical impairment contributed to the injury. The absence of restrictions or limitations does not affect the handicapped status under the statute.

As pointed out earlier, the testimony is conflicting on this issue. However:

"Findings in a workers' compensation case which are supported by substantial competent evidence will be upheld by this court on appellate review even though there is evidence of record which, if given credence by the trial court, would have supported contrary findings." *Monroe v. General Motors Corp.*, 13 Kan. App. 2d 460, Syl. ¶ 4, 773 P.2d 683, *rev. denied* 245 Kan. 785 (1989).

In this case, the trial court found that claimant had a permanent physical condition which preexisted her March 20, 1990, injury and which permanently aggravated that injury. The court also concluded that the March 20 injury would not have occurred but for claimant's preexisting physical condition. These findings bring claimant within the definition of a handicapped employee under our statute and are supported by substantial competent evidence.

## MEDICAL CONTRIBUTION

The Fund argues there is no evidence that claimant's carpal tunnel injury contributed to her shoulder injury. The Fund asserts that claimant testified she was not performing her job duties any differently on March 20, 1990, than she had before. This may be correct, but the evidence is somewhat confusing. The testimony was as follows:

"Q. When you were performing this event on March 20, 1990, were you using your right arm, hand, elbow and shoulder in any different method or manner in which you would have used it before?
"A. No."

There are two ways to interpret claimant's testimony. The "before" in the question may have referred to any point in time prior to March 20, 1990. We will not infer that the "before" specifically referred to the period prior to the onset of her carpal tunnel syndrome.

The Fund next attacks Dr. Schlachter's testimony on the basis that it was predicated on an erroneous assumption. Dr. Schlachter testified that he based his opinion on the assumption that claimant was performing her work in a different manner in order to protect her right hand. He went on to testify that his opinion was not inconsistent with testimony by claimant that she was not using her arm in a different manner. He explained that people are not aware of what goes on in their own bodies or how they use their own body, and they are not aware of the fact they are doing things differently. He indicated that he based his opinion on the

fact that claimant "has a problem with her hand and wrist and that she can't flex and use her hand to pull a pallet with like she would normally, and so she keeps her wrists stiff and uses her shoulder more."

In Dr. Schlachter's opinion testimony, the preexisting right wrist problems not only brought about the March 20, 1990, shoulder injury but prevented what would have been merely an acute problem from being resolved and caused it to ripen into a permanent general bodily disability. The trial court chose to believe Dr. Schlachter's testimony, and that testimony provides substantial competent evidence that the carpal tunnel syndrome did indeed contribute to the shoulder disability.

The evidence is conflicting on the issue. There is medical testimony that claimant's right carpal tunnel syndrome was not a causative factor in her right shoulder bursitis. The Fund's problem is that the trial court apparently did not believe this testimony. The trial court chose to believe Dr. Schlachter when he testified that the carpal tunnel syndrome did contribute to the ultimate shoulder disability. The Fund's efforts to attack the opinion of Dr. Schlachter goes to the weight and credibility of the evidence, and that is within the exclusive province of the trier of fact.

Affirmed.