(949 P.2d 1149)
No. 75,666

WILLIAM H. WOODWARD, *Claimant/Appellee,* v. BEECH AIRCRAFT CORPORATION, Self-Insured, *Respondent/Appellant,* and THE KANSAS WORKERS COMPENSATION FUND, *Appellee.*

Opinion filed April 11, 1997. ■

*David S. Wooding* and *Roger E. McClellan*, of Martin, Pringle, Oliver, Wallace & Swartz, L.L.P., of Wichita, for appellant.

*David H. Farris*, of Render, Kamas & Hammond, of Wichita, for claimant/appellee.

*Kendall R. Cunningham*, of Gilliland & Hayes, P.A., of Wichita, for appellee Kansas Workers Compensation Fund.

Before GERNON, P.J., ROYSE and MARQUARDT, JJ.

MARQUARDT, J.: Beech Aircraft Corporation (Beech) appeals from the order of the Workers Compensation Board (Board), which awarded William H. Woodward benefits based on an 18 percent permanent partial disability to the body as a whole and found that the Workers Compensation Fund (Fund) was not liable for any portion of that award.

Woodward was employed at Beech as a sheet metal assembler. On October 18, 1991, Woodward stepped on an air hose and twisted his left knee.

Beech referred Woodward to Dr. Bossemeyer, who referred Woodward to Dr. Alan L. Kruckemyer. Dr. Kruckemyer performed arthroscopic surgery on Woodward's left knee on December 10, 1991.

On January 5, 1992, Woodward returned to work. Because Woodward favored his injured left knee, he began to suffer pain in his right knee. Woodward notified Beech of the problem with his right knee in mid-January 1992.

Dr. Kruckemyer's medical records of December 24, 1991, noted that Woodward was "developing some increased soreness in his *right* knee because of overuse." (Emphasis added.) Dr. Kruckemyer admitted on cross-examination that following an injury to one leg, a person can overuse or put more stress on the other leg. Dr. Kruckemyer released Woodward from treatment in August 1992, and Woodward continued working at Beech.

On March 29, 1993, Woodward sought treatment from Dr. Joyce, an orthopedic surgeon. Beech would neither authorize nor pay for Woodward's treatment by Dr. Joyce.

At the request of Woodward's counsel, Woodward was examined by Dr. Ernest R. Schlachter on June 25, 1993. At that time, Woodward complained of pain in both knees, occasional buckling in his left knee with the most recent incident being 1 week prior to the examination, and swelling in the left knee. Woodward testified that he considered this recent buckling in his left knee as either a reinjury or a continuation of his previous left knee injury. Dr. Schlachter testified that the aggravation to Woodward's right knee was a result of the October 1991 injury to the left knee.

Dr. Schlachter concluded that Woodward suffered an 18 percent permanent partial impairment of function to the body as a whole as a result of his knee problems.

Dr. Kruckemyer testified that Woodward suffered a 7.5 percent permanent partial functional impairment of the left leg as of August 1992 and an additional 5 percent permanent partial functional impairment of the left leg following the June 1993 buckling injury. Dr. Kruckemyer also testified that the additional 5 percent impairment would not have occurred but for Woodward's preexisting condition.

Prior to his October 18, 1991, injury, Woodward had undergone three surgeries to his right knee. Dr. Gary L. Harbin testified that Woodward had severe degenerative changes in the right knee and that a subsequent injury could hasten the degenerative process; however, the knee would degenerate regardless of any subsequent injury.

The administrative law judge (ALJ) noted that all parties agreed that Woodward suffered a compensable injury to his left knee on October 18, 1991. The ALJ concluded that the complications of the right knee arose from normal activities. The ALJ found that Woodward suffered a 12.5 percent impairment to the left leg only.

The ALJ also found that the Fund was liable for 40 percent of the award. The ALJ viewed the June 1993 left knee buckling incident as a separate injury that would not have occurred but for Woodward's preexisting condition. The ALJ concluded that Beech retained Woodward with knowledge of his previous injury and that he subsequently suffered another work-related injury.

In contrast, the Board found that Woodward aggravated a pre-existing degenerative condition in the right knee as a result of over-compensating for the injured left knee. The Board concluded that Woodward had proved that he "sustained bilateral knee injuries as a result of his work-related accident on October 18, 1991." The Board reasoned that Woodward "has either aggravated or reinjured the right knee as a direct and natural result of the left knee injury." Thus, the Board concluded that Woodward suffered a nonscheduled injury and awarded compensation pursuant to K.S.A. 44-510e.

The Board also concluded that the Fund had no liability for Woodward's injuries. The Board based its conclusion on the finding that the evidence did not establish that the *right* knee injury constituted a subsequent work-related injury.

## SUBSTANTIAL COMPETENT EVIDENCE

Beech argues that Woodward has not proven that he sustained a compensable injury to his right knee and that he should be limited to recovery for a scheduled injury to his left knee.

"Our scope of review in a workers compensation case requires that we view the evidence in a light most favorable to the prevailing party and that we determine whether the trial court's findings are supported by substantial competent evidence." *Grizzle v. Gott Corp.*, 19 Kan. App. 2d 392, 393, 872 P.2d 303 (1993). This reasoning is now equally applicable to direct appeals from the Board to this court under K.S.A. 1996 Supp. 44-556(a) and the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* Our obligation is not to ascertain the facts but rather to determine whether the Board's findings of fact are supported by substantial competent evidence.

In *Jackson v. Stevens Well Service*, 208 Kan. 637, 643, 493 P.2d 264 (1972), the court held:

"[W]hen a primary injury under the [Workers] Compensation Act is shown to have arisen out of and in the course of employment every natural consequence that flows from the injury, including a new and distinct injury, is compensable if it is a direct and natural result of a primary injury."

See *Adamson v. Davis Moore Datsun, Inc.*, 19 Kan. App. 2d 301, 312, 868 P.2d 546 (1994).

The test is not whether the injury causes the condition, but whether the injury aggravates or accelerates the condition. *Claphan v. Great Bend Manor*, 5 Kan. App. 2d 47, 49, 611 P.2d 180, *rev. denied* 228 Kan. 806 (1980). Where a preexisting condition is aggravated by an accidental injury arising out of employment, a claimant is entitled to compensation for the entire disability without apportionment. 5 Kan. App. 2d at 51.

Beech relies on *Boeckmann v. Goodyear Tire & Rubber Co.*, 210 Kan. 733, 738-39, 504 P.2d 625 (1972), in contending that a degenerative condition is not compensable under workers compensation.

In *Demars v. Rickel Manufacturing Corporation*, 223 Kan. 374, 379, 573 P.2d 1036 (1978), the court distinguished *Boeckmann* and held that heavy lifting on the job could constitute a series of accidents that would qualify a claimant for workers compensation. In *Demars*, the medical testimony supported the claim that the heavy lifting aggravated a preexisting condition and *caused* disability. Thus, under *Boeckmann* and *Demars*, the question of whether the aggravation of a preexisting condition is compensable under workers compensation turns on whether that aggravation stemmed from a job-related activity or injury. See *Miller v. Board of Trustees of KPERS*, 21 Kan. App. 2d 315, 321, 898 P.2d 1188 (1995).

Here, the Board found that the accidental injury to the left knee, which the parties agree arose out of and in the course of employment, aggravated the preexisting condition in the right knee. An award of workers compensation is proper where a work-related injury accelerates or aggravates a preexisting condition. See *Claphan*, 5 Kan. App. 2d at 51.

Beech notes that the disability ratings differ from the various doctors that treated Woodward. The Board addressed this argument and noted that Dr. Schlachter and Dr. Harbin used different systems in rating impairments.

" 'Findings in a workers' compensation case which are supported by substantial competent evidence will be upheld by this court on appellate review even though there is evidence of record which, if given credence by the [Workers Compensation Board], would have supported contrary findings.' " *Grizzle*, 19 Kan. App. 2d at 397.

Here, there was conflicting medical evidence over whether the disability to the right knee increased after the left knee injury. The Board's resolution of this conflict is supported by substantial competent evidence.

## BOARD'S AUTHORITY TO REVIEW
## THE ALJ'S DETERMINATION

Beech argues that the Board did not have authority to overturn the ALJ's determination of Fund liability because the issue was raised for the first time at oral argument before the Board without any written request for review. The Fund argues that the Board has de novo review of the ALJ's decision and that if the Board alters the finding of the nature and extent of disability, the Board should also have authority to alter the finding of Fund liability. Stated generally, the issue is whether the Board's scope of review is limited to issues raised in the written request or requests for review.

This issue requires interpretation of K.S.A. 44-551(b)(1), which governs the Board's review of ALJ decisions. Interpretation of a statute is a question of law subject to unlimited review by this court. *Shain v. Boeing Military Airplanes*, 22 Kan. App. 2d 913, 914, 924 P.2d 1280 (1996) (interpreting K.S.A. 44-551[b][1]).

Woodward filed an application for review of the ALJ's decision on the following issues: "1. What is the nature and extent of claimant's disability? 2. Does that disability include both the right and left knees?" Apparently, neither Beech nor the Fund filed an application for review.

K.S.A. 44-551(b)(1) provides in part:

"*All* acts, findings, awards, decisions, rulings or modifications of findings or awards made by an administrative law judge shall be subject to review by the board upon written request of *any interested party* within 10 days and if no such request is made, then the board shall approve such actions, findings, awards, decisions, rulings or modifications of findings or awards of the administrative law judge. Review by the board shall be a prerequisite to judicial review as provided for in K.S.A. 44-556 and amendments thereto. On *any* such review, the board shall have authority to grant or refuse compensation, or to increase or diminish any award of compensation or to remand any matter to the administrative law judge for further proceedings." (Emphasis added.)

K.S.A. 44-551(b)(1) does not limit the Board's authority to issues raised in the written request for review, and the legal principles stated in cases addressing similar issues support this conclusion.

"The Board has, and should have, the authority to correct any errors it may find in the decision of the administrative law judges." *Helms v. Tollie Freightways, Inc.*, 20 Kan. App. 2d 548, 553, 889 P.2d 1151 (1995).

Both parties discuss *Helms v. Pendergast*, 21 Kan. App. 2d 303, 306-09, 899 P.2d 501 (1995), where this court examined the Board's authority to review the question of Fund liability. The *Helms* court concluded:

"Under the facts before us, the Board received applications requesting review from both Helms and Sixta. The Board was within its jurisdiction to review the ALJ's order de novo on the record. Furthermore, Sixta's final question in his application for review raised the question of the Fund's liability. The issue was properly before the Board for review." 21 Kan. App. 2d at 309.

This case is distinguishable from *Helms*. Here, the issue of the Fund's liability was not raised in any written request for review by any party.

In *Boucher v. Peerless Products, Inc.*, 21 Kan. App. 2d 977, 983, 911 P.2d 198, *rev. denied* 260 Kan. 991 (1996), the court affirmed the Board's award of future medical compensation where that issue had not been raised in a request for Board review:

"The next issue presented is whether the Board erred in awarding Boucher future medical compensation.

"In reviewing the record, we do not find that Peerless applied for review of this issue pursuant to K.S.A. 44-551(b)(1). However, we further find that Boucher raised no objection, nor did he question jurisdiction over the issue of future medical compensation award. Both parties addressed the issue in their briefs. We find that this matter is properly before this court and will proceed on the basis that this is an issue to be determined by the court."

K.S.A. 44-551(b)(1) does not limit the Board's scope of review to issues raised in the written request for review. Once a party files a written request for review of the ALJ's decision, the Board has authority to address every issue decided by the ALJ. See *Tollie Freightways*, 20 Kan. App. 2d at 553.

## FUND LIABLE FOR A PORTION OF THE AWARD

Beech argues that if Woodward is compensated for an injury to the right knee, the Fund is liable for that compensation.

In order for Beech to be either completely relieved of liability or entitled to an apportionment of the award from the Fund, Beech has the burden of showing: (1) it knowingly retained a handicapped employee as defined in K.S.A. 44-566(b), and (2) either (a) the injury probably or most likely would not have occurred "but for" the preexisting handicap or (b) the injury was contributed to by the preexisting handicap. K.S.A. 44-567(a).

The Board concluded that the injury to the right knee was a direct and natural consequence of the injury to the left knee and the Fund was not liable.

Beech argues that it retained Woodward with knowledge of the preexisting right knee injury and that it filed a "Form 88"; however, the Form 88 is not in the record. An appellant has the burden of designating a record sufficient to sustain the claimed error. *McCubbin v. Walker*, 256 Kan. 276, 295, 886 P.2d 790 (1994).

The employer bears the burden of proving by a preponderance of the credible evidence that it knowingly hired or retained a handicapped employee. See K.S.A. 44-508(g); K.S.A. 44-566(b); K.S.A. 44-567(b); see generally *McKinney v. General Motors Corp.*, 22 Kan. App. 2d 768, 773-74, 921 P.2d 257 (1996).

Beech argues that the Fund is liable because Beech knowingly retained Woodward after the October 18, 1991, left knee injury. This argument assumes that the June 1993 buckling of the left knee constituted a second injury. The Board did not specifically address the 1993 injury as a second injury; it was treated as a continuation of the previous left knee injury.

Dr. Schlachter examined Woodward about a week after the buckling injury. The Board adopted Dr. Schlachter's testimony that the buckling injury did not rise to the level of a second accident. There was substantial competent evidence to support the Board's conclusions.

Affirmed.