(11 P.3d 1184)
No. 84,746

KENNETH HANSON, *Appellee,* v. LOGAN U.S.D. 326 and EMC INSURANCE COMPANIES, *Appellants.*

Opinion filed October 20, 2000.

*James M. McVay,* of Watkins, Calcara, Rondeau, Friedeman, Bleeker, Glendenning & McVay, Chtd., of Great Bend, for appellants.

*Russell B. Cranmer*, of affiliated attorneys of Pistotnik Law Office, of Wichita, for appellee.

Before BEIER, P.J., ELLIOTT, J., and FRED S. JACKSON, S.J.

BEIER, J.:   This appeal by the respondent-appellant school district and its insurance carrier seeks reversal of a workers compensation award to claimant-appellee Kenneth Hanson for permanent impairment of the function of his right knee. We affirm.

Hanson, who coached track for respondent Logan U.S.D. 326, claimed he injured his knee on May 19, 1995, while unloading supplies at a track meet. Hanson said that his knee popped when he stepped down from a school bus, that he immediately had trouble walking, and that he had swelling and other problems thereafter.

Hanson did not seek treatment for his knee until July 19, 1995. Dr. Gary Harbin, who had performed arthroscopic surgery on the knee in 1989, performed another surgery in August 1995. He removed a bone spur and observed moderately advanced arthritis and bone-on-bone contact consistent with his 1989 observations. Harbin testified that Hanson would have ultimately needed a knee replacement but that the work-related injury could have accelerated the need. Hanson experienced less pain and improved mobility after the bone spur surgery.

Hanson returned to work in the fall of 1995 and continued to coach. He saw Dr. Gregory Woods in February 1996, complaining of stiffness and difficulty straightening his knee and an achy, nonspecific pain. X-rays showed severe degenerative arthritis with bone rubbing on bone. Woods considered the complaints consistent with the degenerative condition, possibly exacerbated by the May 19, 1995, injury. He said Hanson would have had "a fair degree of impairment" before the work-related injury, but he could not judge how much because he had not seen him at that time. Woods recommended a knee replacement to relieve Hanson's pain. Hanson underwent knee replacement surgery in June 1996.

The administrative law judge (ALJ) ordered an independent medical examination by Dr. Kenneth Jansson. In Jansson's opinion, Hanson's waxing and waning of symptoms after the work-related

injury were more consistent with a chronic condition than with an acute injury. Jansson assigned an impairment rating of 10 percent because of Hanson's pain. He attributed 95 percent of the impairment to the preexisting condition.

Based upon an examination of Hanson, his medical history, and his records, Dr. Daniel Zimmerman testified that, in his opinion, the May 1995 incident permanently aggravated the preexisting degenerative change in Hanson's knee. He rated Hanson's impairment of function at 41 percent after Hanson underwent a knee replacement. He believed Hanson would have had some impairment of function prior to the work-related injury but could not quantify it.

The ALJ found that Hanson suffered a personal injury by accident arising out of and in the course of his employment that accelerated his need for knee replacement surgery. The ALJ also found that Hanson suffered a 33.67 percent permanent partial disability of the right lower extremity. The Board modified the award to a 41 percent loss of use.

We review a workers compensation award in the light most favorable to the prevailing party to determine whether the Board's findings are supported by substantial competent evidence. *Woodward v. Beech Aircraft Corp.*, 24 Kan. App. 2d 510, 513, 949 P.2d 1149 (1997). Substantial competent evidence possesses something of substance and relevant consequence or furnishes a substantial basis in fact from which issues can reasonably be resolved. *Depew v. NCR Engineering & Manufacturing*, 263 Kan. 15, 26, 947 P.2d 1 (1997). We will not reweigh evidence or evaluate the credibility of witnesses. *Bradford v. Boeing Military Airplanes*, 22 Kan. App. 2d 868, 871, 924 P.2d 1263, *rev. denied* 261 Kan. 1084 (1996).

The parties do not dispute that, before his alleged work-related injury, Hanson had had several knee surgeries and suffered from a degenerative condition that would ultimately necessitate a total knee replacement. Respondent questions whether Hanson actually experienced injury on the date and under the circumstances alleged, and whether the amount of impairment attributed to the injury's aggravation of his preexisting disability is correct.

The finding that Hanson suffered an accidental injury in the course of his employment on May 19, 1995, is supported by substantial competent evidence. Hanson testified that he felt his knee pop and that he had immediate pain and swelling. A claimant's testimony alone is sufficient evidence of his own physical condition. See *Graff v. Trans World Airlines*, 267 Kan. 854, 863-64, 983 P.2d 258 (1999). Although respondent makes a compelling argument regarding Hanson's delay in seeking medical treatment, Dr. Harbin's testimony supports his patient's position. Harbin testified that Hanson's history subsequent to the alleged injury was consistent with an aggravation of his condition. We are not free to substitute our judgment of the credibility of the witnesses.

With regard to the amount of impairment attributed to the work-related injury's aggravation of Hanson's preexisting disability, we turn first to *Woodward.* In that case, the employee experienced aggravation of preexisting severe degenerative changes in his right knee as a result of an on-the-job injury to his left knee. Considering evidence that the knee would degenerate regardless of subsequent injury and that the injury could only hasten the process, the Board found that the aggravation of the right knee was compensable as a direct and natural result of the work-related injury to the left knee. 24 Kan. App. 2d at 512-13. This court affirmed the Board's functional disability award for a bilateral injury, noting that the test is not whether the job-related activity or injury caused the condition but whether the job-related activity or injury aggravated or accelerated the condition. 24 Kan. App. 2d at 514.

When a work-related event causes aggravation of a preexisting condition, the employee is entitled to compensation for an increase in the amount of functional impairment. The controlling statute provides:

"The employee shall not be entitled to recover for the aggravation of a preexisting condition, except to the extent that the work-related injury causes increased disability. Any award of compensation shall be reduced by the amount of functional impairment determined to be preexisting." K.S.A. 1999 Supp. 44-501(c).

The statute clearly distinguishes between a preexisting condition and a preexisting disability. There is no evidence of the amount of

Hanson's preexisting disability, and there is some evidence that Hanson had no impairment prior to the May 19, 1995, injury. Hanson had not sought treatment for his knee from Dr. Harbin since the 1989 surgery, and Hanson testified his activities were not restricted because of his knee until after the May 1995 injury. There was no amount of impairment for the Board to deduct from the total impairment to ensure that respondent was excused from covering the preexisting portion.

We agree with Hanson that the burden of proving his preexisting impairment as a deduction from total impairment belonged to respondent once Hanson had come forward with evidence of aggravation. We think this type of burden shifting pattern is implicit in *Woodward's* holding that, where a work-related injury causes aggravation or acceleration of a preexisting condition, compensation is allowed for the entire disability without apportionment of causation. 24 Kan. App. 2d at 514. Hence, the claimant need only show aggravation or acceleration of the condition and a causal relationship between the work-related injury and the disability. Once the claimant shows increased disability, compensation is for the full amount of disability less any amount of preexisting impairment established by the respondent. This is also pragmatic. Only the respondent has an interest in establishing the amount of preexisting impairment, and the respondent would be as foolish to rely on the claimant to prove it as the claimant would be to do so.

Because the record lacked any evidence of the amount of preexisting disability or impairment, the Board had no choice but to deduct zero from the total.

Affirmed.