(324 P.3d 1122)
No. 110,085

JUDY A. WARD, *Appellee/Cross-appellant*, v. ALLEN COUNTY HOSPITAL and ACE AMERICAN INSURANCE CO. (BROADSPIRE), *Appellants/Cross-appellees.*

Opinion filed May 9, 2014.

*Brent M. Johnston* and *Anton C. Andersen*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellants/cross-appellees.

*Patrick C. Smith*, of Patrick C. Smith, LLC, of Pittsburg, for appellee/cross-appellant.

Before LEBEN, P.J., GREEN and HILL, JJ.

GREEN, J.: The claimant, Judy Ward, sustained an injury while working for the respondent, Allen County Hospital (hospital). Ward applied for workers compensation benefits based on her injuries. The administrative law judge (ALJ) held a hearing to determine, among other things, the nature and extent of Ward's disability. Ultimately, the ALJ awarded Ward permanent partial disability compensation for a 75.50% work disability, up to the statutory maximum compensation award of $100,000 under K.S.A. 44-510f(2). The hospital appealed to the Kansas Workers Compensation Board (Board), which modified Ward's ALJ award to reflect a credit for her 15% preexisting impairment of function. But instead of reducing Ward's compensation award by 15%, a majority of the Board decided to merely subtract 15% from her total amount of work disability. Thus, a majority of the Board concluded that Ward was entitled to compensation for a 60.75% work disability, which still resulted in her receiving the statutory maximum compensation award of $100,000.

On appeal, the hospital argues that the Board erred in calculating Ward's permanent partial disability award. Specifically, the hospital contends that we "should find that the [Board] below erroneously interpreted and applied K.S.A. 44-501(c)" when calculating Ward's disability compensation award. Ward has filed a cross-appeal, arguing that the Board erred in finding that she had a 15% preexisting functional impairment. We determine that Ward's cross-appeal has no merit. The Board's factual finding that Ward suffered from a 15% preexisting functional impairment, in light of the record as a whole, is supported to the appropriate standard of proof by substantial evidence. See K.S.A. 2013 Supp. 77-621(c)(7).

Moving to the hospital's appellate argument, we hold that the Board erred in calculating Ward's permanent partial disability com-

pensation award. The express language of K.S.A. 44-501(c) requires that a claimant's award of compensation be reduced by his or her percentage of preexisting functional impairment. Because the express language of K.S.A. 44-501(c) requires the award of compensation to be reduced by the percentage of the preexisting functional impairment, the Board erred in its calculation. Accordingly, we reverse and remand with directions that the Board calculate Ward's permanent partial disability compensation award consistent with this opinion.

Ward began working at Allen County Hospital as a shift nurse in 1993. In 2003, Ward underwent a foraminotomy and discectomy at the C6-7 level to repair her cervical spine. During that time, Ward performed post-surgery physical therapy. Ward took between 9 and 12 weeks off before returning to work. Ward did not have any further work restrictions following the surgery, and she did not seek any medical attention once she returned to work.

On April 22, 2010, Ward reinjured her cervical spine while assisting a patient sitting on the side of a bed. When the patient began to fall after trying to get up, Ward caught the weight of the patient with her right arm. Ward immediately felt pain in her neck and right shoulder. Dr. Nazih Moufarrij treated Ward for her work injury. Specifically, Dr. Moufarrij performed an anterior cervical discectomy and fusion at the C6-7 level. This procedure was in the same area as Ward's 2003 surgery. Ward did not return to work after the second surgery.

Ward applied for workers compensation benefits. The ALJ held a hearing to determine, among other things, the nature and extent of Ward's disability. Dr. Paul Stein, a board certified neurosurgeon, evaluated Ward after her work injury. During Dr. Stein's examination, Ward stated that she continued to experience residual numbness in the fingertips of her right hand after her 2003 surgery. After Dr. Stein finished his evaluation, he concluded that Ward had an overall 25% impairment to her body as a whole based on the American Medical Association Guides to the Evaluation of Permanent Impairment 4th ed. 1995) (AMA Guide). Dr. Stein also determined that Ward had a 15% preexisting permanent impairment to the body because of her 2003 radiculopathy and surgery.

Regarding Ward's 2003 injury, Dr. Stein explained that Ward fit under Cervicothoracic Category III of the Diagnosis-Related Estimates (DRE) Model because a foraminotomy is performed to relieve nerve root compression resulting in radiculopathy. Consequently, Dr. Stein stated that once a patient has a radiculopathy diagnosis, then that diagnosis and impairment remains with the patient. Dr. Stein then explained that Ward clearly had radicular nerve root compression in 2003 because no competent surgeon would have performed the procedure unless she suffered from that condition. Finally, Dr. Stein concluded that Ward had a 50% task loss.

Ward also was examined by Dr. Edward Prostic after her 2010 work injury. Dr. Prostic used a two-point inclinometer to measure Ward's range of motion. After evaluating Ward, Dr. Prostic concluded that she had a 53% task loss. Dr. Prostic's testimony, however, was equivocal regarding Ward's preexisting impairment, and he ultimately refrained from offering an opinion on whether she had suffered a preexisting impairment.

The ALJ concluded that Ward had "suffered personal injury by accident, arising out of and in the course of her employment" with the hospital. By averaging the task loss opinions of the parties' experts, the ALJ concluded that Ward suffered a 51.5% task loss. The ALJ also concluded that Ward had a 100% wage loss and that Ward did not have to prove that her wage loss was caused by her work injury.

As for the nature and extent of Ward's injury, the ALJ believed that Dr. Stein's report was more credible, and the ALJ concluded that Ward had suffered a 25% impairment of function to the body as a whole. The ALJ determined that 15% of Ward's impairment of function to the body as a whole predated the 2010 work injury. The ALJ awarded Ward 41.50 weeks of permanent partial disability at a rate of $546 or $22,659 as compensation for 10% functional disability. Then, the ALJ concluded that the average of Ward's task loss and wage loss resulted in a 75.75% permanent partial general "work" disability. However, the ALJ awarded Ward permanent partial disability compensation for a 75.50% work disability, up to the statutory maximum compensation award of $100,000.

The hospital appealed to the Board. The Board modified the ALJ's award to reflect a credit for Ward's 15% preexisting impairment of function. But instead of reducing Ward's compensation award by 15%, a majority of the Board decided to merely subtract 15% from Ward's total amount of work disability. As a result, a majority of the Board concluded that Ward was entitled to compensation for a 60.75% work disability, which still resulted in Ward receiving the statutory maximum compensation award of $100,000. In reaching its decision, a majority of the Board noted that it would have been "excessive" to reduce Ward's compensation award by 15% as opposed to reducing her work disability.

One member of the Board dissented from the decision. The dissenting board member opined that the majority's decision was inconsistent with the plain language of K.S.A. 44-501(c). According to the dissenting member, the appropriate "method of applying the preexisting credit in this and similar cases is to reduce the statutory maximum amount by the percentage of preexisting impairment."

The hospital timely appealed from the Board's decision.

In addition, Ward has filed a cross-appeal, contending that the ALJ and Board erred in finding that she had a 15% preexisting functional impairment.

*Did the Kansas Workers Compensation Board Err in Determining that Ward Had a 15% Preexisting Functional Impairment?*

Through her cross-appeal, Ward contends that the Board erred in finding that she had a 15% preexisting functional impairment. On the other hand, the hospital maintains that the Board's determination that Ward had incurred a 15% preexisting functional impairment was supported by substantial competent evidence.

K.S.A. 2013 Supp. 44-556(a) directs that final orders of the Workers Compensation Board are subject to review under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq.*, as amended. The standard of review varies depending upon the issue raised. See K.S.A. 2013 Supp. 77-621 (defining and limiting scope of review of administrative decisions under KJRA). Here, Ward's cross-appeal requires us to determine whether the Board erred in

finding that she had suffered a 15% preexisting functional impairment. An appellate court reviews a challenge to the Board's factual findings in light of the record as a whole to determine whether the findings are supported to the appropriate standard of proof by substantial evidence. See K.S.A. 2013 Supp. 77-621(c)(7).

" '[I]n light of the record as a whole' " is statutorily defined as meaning

"that the adequacy of the evidence in the record before the court to support a particular finding of fact shall be judged in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record, compiled pursuant to K.S.A. 77-620, and amendments thereto, cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact. In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review." K.S.A. 2013 Supp. 77-621(d).

Although not statutorily defined, "substantial evidence" refers to " 'evidence possessing something of substance and relevant consequence to induce the conclusion that the award was proper, furnishing a basis [of fact] from which the issue raised could be easily resolved.' " *Saylor v. Westar Energy, Inc.*, 292 Kan. 610, 614, 256 P.3d 828 (2011).

As might be expected, the most common type of evidence for this purpose is medical testimony and reports. Here, the medical evidence consisted of the testimony of Drs. Stein and Prostic. During his deposition, Dr. Stein confirmed that Ward had undergone a right C6-7 foraminotomy operation in 2003 because of a non-work-related injury. Dr. Stein explained that the purpose of a foraminotomy operation is to take pressure off the nerve for radiculopathy or radicular pain. According to Dr. Stein, Ward complained of discomfort and residual numbness in the fingertips of her right hand after the 2003 surgery.

As for Ward's permanent and preexisting impairments, Dr. Stein stated the following:

"Using [t]he Fourth Edition of the AMA Guides to the Evaluation of Permanent Impairment, because of the loss of the motion segment from the fusion at C6-7 she would be in diagnosis related Category IV, which carries a 25 percent whole

person impairment. She had had a previous radiculopathy, she had had pervious surgery, and my estimate for her pre-existing status of impairment used in the AMA Guides requirements was Category III, 15 percent. Therefore, she moved from Category III to Category IV by virtue of this injury, and the additional surgery. And so there would be a ten percent impairment to the body as a whole from the injury of April 22nd, 2010."

Dr. Stein also pointed out that under the Fourth Edition of the AMA Guides, an individual who undergoes cervical spine surgery automatically qualifies for permanent impairment regardless of the outcome of the surgery. When Dr. Stein was questioned about the use of the AMA Guides during cross-examination, he stated that "when they did [t]he Fourth Edition of [t]he Guides, they said if you have laminectomy, you lost some physiologic part of your function. I am not going to argue with that." Dr. Stein also noted that no competent surgeon would have performed Ward's 2003 operation unless she had significant signs of radiculopathy. Because Ward had undergone neck surgery based on her radiculopathy, Dr. Stein opined that Ward had a 15% preexisting functional impairment according to the AMA Guides. Finally, Dr. Stein noted that Ward's complaints of numbness in her fingertips following the 2003 surgery were evidence of loss of physiologic function, which supported his opinion.

Dr. Prostic, on the other hand, was equivocal about whether Ward had any preexisting functional impairment. At one point Dr. Prostic stated that Ward may have had a preexisting impairment. Moreover, Dr. Prostic stated "yes" when asked whether it was "clear from the medical records that [Ward] had a prior problem at C6-7." Dr. Prostic also stated that it was common for someone who had undergone the same procedure as Ward's 2003 operation to have a decrease in range of motion after the surgery. But later during his testimony, Dr. Prostic stated that "[Ward] may not have had any permanent impairment following her 2003 surgery." Even so, Dr. Prostic stated that he was not providing an opinion as to Ward's preexisting impairment.

Based on the medical evidence provided above, the Board's 15% preexisting impairment finding is supported by substantial evidence. Using the AMA Guides, Dr. Stein opined that Ward suf-

fered from a 15% preexisting functional impairment. Dr. Stein's testimony was not contradicted by Dr. Prostic. Indeed, Dr. Prostic stated that his opinion did not include a determination as to Ward's preexisting impairment. As a result, there is no medical evidence to contradict or rebut Dr. Stein's calculation regarding the 15% preexisting disability.

Medical testimony may properly be the basis of the Board's decision. In reaching its decision, the Board relied on Dr. Stein's testimony. In fact, without the benefit of Dr. Stein's testimony, the Board would undoubtedly have had difficulty determining whether Ward had suffered a functional preexisting impairment. Apparently, the Board believed that Dr. Stein's testimony was credible. In reviewing the evidence in light of the record as a whole, the Board's finding was supported by substantial evidence. As a result, Ward's cross-appeal lacks merit.

*Did the Kansas Workers Compensation Board Err in Calculating Ward's Permanent Partial Disability Award?*

Based on the conclusion that Ward suffered from a 15% preexisting functional impairment, the hospital argues that the Board erred in calculating Ward's permanent partial disability compensation award. Specifically, the hospital contends that this court "should find that the [Board] below erroneously interpreted and applied K.S.A. 44-501(c) and erred in refusing to use the calculation method utilized by the Court of Appeals in *Payne* [*v. Boeing Co.*, 39 Kan. App. 2d 353, 180 P.3d 590 (2008).]" Ward disagrees, arguing that any reduction in her compensation award "should be calculated as the Board did herein, and not by the approach used in *Payne*."

As mentioned previously, K.S.A. 2013 Supp. 44-556(a) directs that final orders of the Workers Compensation Board are subject to review under the KJRA. The standard of review varies depending upon the issue raised. See K.S.A. 2013 Supp. 77-621 (defining and limiting scope of review of administrative decisions under KJRA). This court's appellate review of the hospital's argument involves statutory interpretation. Previously, Kansas courts generally gave substantial deference to an administrative agency's inter-

pretation of a statute that the agency administers, especially when the agency was one of special competence and experience. But our Supreme Court no longer extends deference to an agency's statutory interpretation. *Douglas v. Ad Astra Information Systems,* 296 Kan. 552, 559, 293 P.3d 723 (2013) ("In dealing with a statute in a workers compensation appeal, no deference is due the interpretation or construction given the statute by the ALJ or the Board."); *In re Tax Appeal of LaFarge Midwest,* 293 Kan. 1039, 1044, 271 P.3d 732 (2012); *Hill v. Kansas Dept. of Labor,* 292 Kan. 17, 21, 248 P.3d 1287 (2011) (noting that the doctrine of operative construction has lost favor). Thus, cases relying on the doctrine of operative construction should no longer be cited for issues involving statutory interpretation in administrative cases since appellate court review is now unlimited.

In this case, the hospital contends that the Board misinterpreted K.S.A. 44-501(c) when it calculated Ward's permanent partial disability compensation award. The question of whether the formula used by the Board is correct must of course be determined by an ascertainment of the legislative intent as gathered from K.S.A. 44-501(c), which states: "The employee shall not be entitled to recover for the aggravation of a preexisting condition, except to the extent that the work-related injury causes increased disability. Any award of compensation shall be reduced by the amount of functional impairment determined to be preexisting." In arriving at this intent, we will endeavor to apply the ordinary rules of statutory construction which we find unnecessary to repeat here.

For an award to be reduced by an amount of preexisting functional impairment, the current injury must constitute an aggravation of the preexisting condition. *Lyons v. IBP, Inc.,* 33 Kan. App. 2d 369, 379, 102 P.3d 1169 (2004). Once it is established that the current injury is an aggravation of the preexisting injury, the respondent—in this case the hospital—has the burden of proving the amount of preexisting impairment to be deducted. *Hanson v. Logan U.S.D. 326,* 28 Kan. App. 2d 92, 96, 11 P.3d 1184 (2000), *rev. denied* 270 Kan. 898 (2001). This determination must be based upon the AMA Guides. K.S.A. 44-510e(a); *Criswell v. U.S.D. No. 497,* No. 104,517, 2011 WL 5526549, at *6 (Kan. App. 2011) (un-

published opinion), *rev. denied* 296 Kan. 1129 (2013). As discussed in the previous issue, substantial evidence supported the Boards' finding that Ward had suffered from a preexisting functional impairment. Ward's preexisting functional impairment was aggravated when she injured the same portion of her spine on April 22, 2010. Thus, we must decide whether the Board erred under K.S.A. 44-501(c) when it calculated Ward's disability compensation award.

Our Supreme Court, particularly in the area of workers compensation, has declared that "an appellate court must give effect only to express statutory language, rather than speculating what the law should or should not be, and that we will not add something to a statute not readily found in it." *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 610, 214 P.3d 676 (2009). K.S.A. 44-501(c) directs that an award be reduced "by the amount of functional impairment determined to be preexisting."

Below, a majority of the Board held that Ward's "15 percent preexisting functional impairment should be subtracted from the overall 75.75 percent work disability." The majority reasoned that if it reduced Ward's compensation award by 15%, then "the credit would reduce the total award by $33,988.60, approximately 44 percent." The majority then reasoned that this appears to be "excessive based upon a 15 percent preexisting impairment."

In arriving at its compensation award for Ward, the Board determined that she had sustained a 75.75% work disability. This would result in an award of $171,640.56 (415 weeks per K.S.A. 44-510e $\times$ 75.75% = 314.36 weeks $\times$ $546 = $171,640.56). The Board subtracted 15% from the 75.75% work disability to arrive at work disability of 60.75%. This would result in an award of $137,652.06 (415 weeks $\times$ 60.75% = 252.11 weeks $\times$ $546 = $137,652.06). By operation of K.S.A. 44-510f, the Board determined that Ward's award would have to be reduced to the statutory maximum compensation cap of $100,000. Consequently, the Board determined that Ward was entitled to permanent partial disability compensation at the rate of $546 per week not to exceed $100,000 for a 60.75 % work disability ($100,000 $\div$ $546 = 183.15 weeks).

The Board determined that as of May 22, 2013, Ward was owed 160.86 weeks of permanent partial disability compensation at the

rate of $546 per week for a total amount of $87,829.56, which was to be paid in one lump sum. The remaining balance of $12,170.44 was to be paid to Ward at the rate of $546 per week until fully paid. These two amounts total $100,000.

A dissenting Board member disagreed with the majority's compensation award. According to the dissenter, "[i]f no credit is taken on a maximum compensation case, like this one, the legislative mandate that the 'award of compensation be reduced by the amount of functional impairment determined to be preexisting' is not accomplished." The dissenter believed that when Ward's maximum compensation award of $100,000 was reduced by 15% she would be entitled to a compensation award of $85,000. The dissenter maintained that this method for computing the reduction of the preexisting functional impairment was "consistent with the [legislature's] intent and complies with the plain language of K.S.A. 2009 Supp. 44-501(c)."

The dissenter's interpretation of K.S.A. 44-501(c) seems sound. The key phrase under K.S.A. 44-501(c) is "[a]ny award of compensation shall be reduced." (Emphasis added.) Inherent in that phrase is a requirement that a compensation award must be calculated before any reduction is made. The majority's method of reducing Ward's work disability percentage by the percentage of her preexisting functional impairment is not supported by the workers compensation statutes or caselaw.

As the dissenter correctly points out, the legislature's intent is not reached under the majority's award calculation. "Before 1993, the employer bore the risk of employing someone with a preexisting disability. See *Demars v. Rickel Manufacturing Corporation*, 223 Kan. 374, 376-77, 573 P.2d 1036 (1978). In 1993, K.S.A. 44-501(c) was amended. L. 1993, ch. 286, sec. 24. In general, the 1993 amendments were enacted to reduce the cost of workers compensation insurance premiums. See *Dickens v. Pizza Co.*, 266 Kan. 1066, 1071, 974 P.2d 601 (1999). K.S.A. 44-501(c) was one aspect of that effort." *Payne*, 39 Kan. App. 2d 359-60. The legislature's intent is not achieved under the majority's calculation of Ward's compensation award because her compensation award is not re-

duced under its calculation; that is, Ward still would receive the statutory maximum compensation award of $100,000.

While a majority of the Board believes that reducing Ward's award of compensation by the percentage of her preexisting functional impairment is "excessive," our Supreme Court has declared that "an appellate court must give effect only to express statutory language, rather than speculating what the law should or should not be, and that we will not add something to a statute not readily found in it." *Bergstrom*, 289 Kan. at 610. Because the express language of K.S.A. 44-501(c) requires the award of compensation to be reduced by the amount of the preexisting functional impairment, the majority of the Board erred in its calculation.

Now we turn our attention to the hospital's method for calculating Ward's compensation award. We note that the hospital directs this court's attention to *Payne*, 39 Kan. App. 2d 353. In *Payne*, this court affirmed the calculation of the claimant's compensation award. The ALJ in *Payne* calculated claimant's compensation award by determining the amount of weeks it would have taken her to reach the statutory maximum award for a permanent total disability. Based on the statutory maximum of $125,000, it would have taken claimant 299.76 weeks of payments at her average weekly rate of $417 before reaching the statutory maximum amount of $125,000. Payne's medical evidence showed that she had suffered 35% impairment to her body as a whole because of her preexisting back condition and 10% increased impairment due to her later work-related aggravation.

Payne's employer did not dispute that she was permanently and totally disabled but argued that her award should be reduced because of her preexisting 35% impairment under K.S.A. 44-501(c). The ALJ agreed with the employer and reduced Payne's award accordingly. The ALJ determined that Payne would have been entitled to 145.25 weeks of compensation for her 35% preexisting impairment (415 weeks × 35% = 145.25 weeks). "Subtracting these 145.25 weeks from the 299.76 weeks of permanent total disability payments resulted in an award of 154.51 weeks, or $64,430.67, less amounts previously paid." *Payne*, 39 Kan. App. 2d

at 356. The ALJ's calculation was affirmed by a majority of the Board.

In affirming the Board's decision, the *Payne* court determined that Payne's narrow reading of K.S.A. 44-510(c) and K.S.A. 44-510f(a), *i.e.*, "that her disability award should continue for the duration of her disability up to the $125,000 cap on total benefits, ignores the overarching effect of K.S.A. 44-501(c) on her preexisting functional impairment." *Payne*, 39 Kan. App. 2d at 357. In other words, Payne was not entitled to the statutory maximum because her compensation award had to be reduced by her 35% preexisting functional impairment. Although *Payne* involved a permanent total disability and the present appeal involves a permanent partial disability, the plain language of K.S.A. 44-501(c) does not distinguish between these two types of disabilities.

Thus, the hospital contends that the *Payne* formula should be adopted in calculating the K.S.A. 44-501(c) credit in this case. The hospital asserts that Ward's compensation award should be calculated as follows:

"The [a]ppellant submits that the Board should have determined the value in terms of weeks of compensation of [Ward's] preexisting impairment by converting 15% to 62.25 weeks (15% multiplied by 415 weeks per K.S.A. 44-510e) . . . .

". . . [Then], the value of the work disability is converted to a number of weeks of compensation by dividing $100,000.00 by [Ward's] weekly compensation rate of $546.00. This results in a corresponding value of 183.15 weeks. The Board then should have subtracted the value of the preexisting impairment from the value of the work disability, which would leave 120.9 weeks of compensation. Accordingly, the Board should have found that, after applying the 44-501(c) credit, [Ward] was entitled to an additional 120.9 weeks of compensation, or $66,011.40."

The Board's dissent, however, correctly pointed out that *Payne's* formula for calculating the K.S.A. 44-501(c) credit in work disability cases can be inconsistent because the formula was "based upon a variety of factors, including the average weekly wage and percentage of work disability." The Board's dissent also noted that a problem arises when a claimant's work disability exceeds the statutory maximum compensation cap. In this case, Ward's work disability exceeded the statutory maximum compensation cap of $100,000.

Instead of applying the *Payne* formula for calculating the K.S.A. 44-501(c) credit, the Board's dissent would have calculated Ward's compensation award simply by subtracting 15% from the statutory maximum compensation award of $100,000. Under the dissenter's interpretation, Ward's compensation award would have been $85,000. There is abundant support for adopting the Board's dissent in calculating the K.S.A. 44-501(c) credit in this work disability case. When computing the K.S.A. 44-501(c) credit using the 183.15 weeks rather than using the maximum weekly compensation rate of 415 weeks, as proposed in the hospital's calculation, one would arrive at the same amount ($85,000) as did the Board's dissent. For example, as stated in the hospital's calculation, the 183.15 weeks represented the number of weeks it would have taken Ward to reach the statutory maximum compensation cap of $100,000 ($100,000 ÷ $546 per week = 183.15 weeks). If the 183.15 weeks were reduced by the 15% preexisting functional impairment, a total of 155.68 weeks would remain (183.15 weeks × 15% = 27.47 weeks; 183.15 weeks - 27.47 weeks = 155.68 weeks). If the 155.68 weeks were multiplied by $546, the total amount would be $85,001. Except for a difference of $1, this is the same amount as arrived at by the Board's dissent.

Moreover, the hospital's use of the maximum 415 weeks in its calculation is somewhat skewed. Obviously, because of Ward's 75.75% work disability and weekly compensation rate of $546, Ward is never going to receive weekly compensation of $546 for 415 weeks or, for that matter, 314.36 weeks (415 weeks × 75.75% = 314.36 weeks). Yet, the hospital uses the period of 415 weeks in determining the number of weeks (62.25 weeks) that should be subtracted from the 183.15 weeks (which is the number of weeks it will take Ward to reach the statutory cap of $100,000). It seems somewhat inconsistent to suggest on the one hand that Ward is limited to 183.15 weeks of compensation at the weekly rate of $546 and on the other that the maximum 415 weeks should be used rather than 183.15 weeks when determining the K.S.A. 44-501(c) credit. K.S.A. 44-510e(a)(1)-(3) does not support such an interpretation.

Thus, we feel that the *Payne* holding for calculating the K.S.A. 44-501(c) credit does not govern this case. We note that *Payne* was decided when the appellate courts gave deference to an agency's interpretation of a statute and that the *Payne* court affirmed the Board's formula for calculating the K.S.A. 44-501(c) credit. After our Supreme Court holding in *Bergstrom*, 289 Kan. at 610, it became abundantly clear that appellate courts were to pay close attention to the exact language of the workers compensation statutes. Moreover, as indicated in the cases cited previously, our Supreme Court no longer extends deference to an agency's statutory interpretation.

By clear and unmistakable language, our legislature has stated that an injured employee is entitled to recover for an aggravation of a preexisting condition when the work-related injury causes an increased disability. It then provides that "[a]ny *award of compensation shall be reduced by the amount of functional impairment determined to be preexisting.*" (Emphasis added.) K.S.A. 44-501(c). Because Ward's work disability exceeded the statutory maximum compensation cap of $100,000 and because Ward would have exhausted the statutory maximum compensation cap before reaching the statutory maximum of 415 weeks, we determine that the 15% preexisting functional impairment should have been applied against the $100,000 cap, thus, allowing a compensation award of $85,000.

For this reason, the formula of the Board's dissent is in complete harmony with K.S.A. 44-501(c) to the effect that any award of compensation shall be reduced by the amount of functional impairment determined to be preexisting. Nevertheless, we feel that this formula should be applied in situations only when a claimant's work disability value exceeds the statutory maximum compensation cap and when claimant will reach or attain the statutory maximum compensation cap before the statutory maximum number of weeks have been exhausted. This construction of K.S.A. 44-501(c) greatly simplifies its administration.

Reversed and remanded with directions.

\* \* \*

LEBEN, J., concurring: I agree with the holding in this case and

with all but the final paragraph of the court's opinion. K.S.A. 44-501(c) requires that "[a]ny award of compensation . . . be reduced by the amount of functional impairment determined to be preexisting." Counsel in our case agreed at oral argument that "the amount of functional impairment" is necessarily expressed as a percentage under the required American Medical Association Guides to the Evaluation of Permanent Impairment (4th ed. 1995).

In the case now before us, the award calculated before applying K.S.A. 44-501(c) was $100,000, the statutory maximum. Applying K.S.A. 44-501(c) as written requires that we reduce the award by the amount of functional impairment, which is 15 percent. I express no opinion on how K.S.A. 44-501(c) should be applied in other circumstances, such as when the award would not otherwise exceed the statutory maximum. That question is not presented to us in this case.