NOT DESIGNATED FOR PUBLICATION

No. 114,455

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

HILLARY L. NEWELL,
*Appellee*,

v.

SCHWAN'S GLOBAL SUPPLY CHAIN, INC.,
and HARTFORD INS. CO. OF THE MIDWEST,
*Appellants*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed August 26, 2016. Affirmed.

*Jared T. Hiatt*, of Clark, Mize & Linville, Chartered, of Salina, for appellants.

*Melinda G. Young*, of Bretz & Young, L.L.C., of Hutchinson, for appellee.

Before SCHROEDER, P.J., GREEN, J., and STUTZMAN, S.J.

*Per Curiam*:  Hillary Newell incurred an injury to her left wrist while working for Schwan's Global Supply Chain, Inc. (Schwan's). In a decision rendered on August 28, 2015, a majority of the Workers Compensation Board (the Board) reversed an award from an administrative law judge (ALJ) that denied entitlement to future medical treatment as part of Newell's workers compensation benefits. The Board found she had proven entitlement to future medical treatment. Schwan's and its insurance carrier, Hartford Insurance Co. of the Midwest, appeal. For the reasons explained below, we affirm.

1

FACTS AND PROCEDURAL BACKGROUND

In August 2011, Newell began working at Schwan's through a temporary agency and was hired as a direct employee in January 2012. On March 20, 2012, Newell was taking out trash from the packaging line when she felt a pop and a burning sensation in her left wrist as she lifted a trash can. After she reported the injury to her supervisor, Newell went to the nurse's station and had ice applied to her wrist. Following the injury, Newell continued to perform her regular job duties but returned to the nurse's station each day for ice applications. According to Newell, her wrist continued to hurt whenever she lifted or moved something.

On March 28, 2012, Newell visited Dr. James J. Schafer, Schwan's company doctor. Schafer recommended pain medication and physical therapy and restricted Newell to light duty and nonrepetitive work with her left hand. Shafer continued to treat Newell through May 2012.

On June 1, 2012, Newell voluntarily resigned her employment with Schwan's to work for another company. About 2 weeks later, Newell visited an orthopedic surgeon, Dr. Gary L. Harbin, following a referral from Shafer. Harbin diagnosed Newell with left wrist De Quervain's tenosynovitis, a type of tendonitis. After conservative treatment—including physical therapy, medication, splints, and injections—failed to provide Newell relief, Harbin performed a type of surgery referred to as a De Quervain's release on July 17, 2012. After the surgery, Newell no longer suffered from constant pain when using her left hand but still complained of some discomfort. On January 7, 2013, Harbin rated Newell as having a 3 percent left upper extremity impairment and released her to full duty, allowing her to return on an as-needed basis.

On April 25, 2013, Newell completed an application for hearing and submitted it to the Kansas Department of Labor's Division of Workers Compensation, where she

sought compensation for her past medical treatment and requested future medical benefits. At the request of Newell's attorney, Dr. George G. Fluter, who is board certified in physical medicine and rehabilitation, examined Newell on July 16, 2013. Fluter also reviewed her medical records and x-rays from Shafer and Harbin. Newell complained to Fluter of constant sharp, shooting, and burning left wrist pain. Newell rated her level of pain at 8 on a scale of 10. Newell further complained that her pain was made worse by bending and twisting her wrist. In Fluter's opinion, Newell's work injury was the prevailing factor causing her condition. He assigned Newell a functional impairment to the left upper extremity of 9 percent and recommended medication, imaging studies, and orthopedic reevaluation. Fluter testified in a deposition that Newell would "more likely than not" need future medical treatment. Although Fluter admitted that he was not sure what type of treatment Newell would need in the future, he expected her to have a continued need for certain types of medication and believed that surgery would be appropriate if her problems persisted.

On March 19, 2014, Dr. E. Bruce Toby examined Newell at Schwan's request. Toby is a board-certified orthopedic surgeon specializing in hand surgery. After his examination of Newell and review of her x-rays, Toby diagnosed Newell with "status post De Quervain's release with persistent symptoms" and agreed that her work injury was the prevailing factor causing her condition. Despite Newell's complaints of pain, Toby recommended no additional medical treatment. Specifically, Toby concluded:

>"With a lack of physical findings, we would recommend observation only at this point. I would not recommend surgery. If her symptoms were to worsen, she would be a candidate for a wrist arthroscopy. There would be no way to repair the ligaments at this point. She would require some type of significant reconstruction.
>
>"Despite the MRI, I see no evidence of a scapholunate dissociation. We would not recommend additional surgeries. I think her symptoms are relatively minor. I believe she probably could be rated and released. I believe she has some residual of De

3

Quervain's. I believe the prevailing cause for her De Quervain's is probably the injury as described. I do not think she needs further treatment or surgery."

Toby later stated in a letter to Schwan's attorney that he would not recommend any type of additional surgery for Newell and that he thought "it would be more probable that she would not require future medical treatment." Toby testified in a deposition that Newell may need some over-the-counter medications, but she would not need additional treatment or surgery unless her symptoms worsened. In that case, Toby stated that Newell might consider a wrist arthroscopy, which would involve "significant reconstruction." Toby admitted that he last examined Newell on March 19, 2014, and did not know whether her symptoms had worsened since that time.

At a hearing before the ALJ, Newell testified that after her surgery her wrist no longer hurt constantly, but she felt that it was "getting worse" because she still had a lot of pain when performing everyday activities. She claimed she experienced pain, popping, and burning when she used her left wrist to lift, push, or pull. Newell stated that she often dropped things and could no longer hold her 40-pound daughter or hold a cup of tea for longer than 90 seconds. She testified that she did not take any pain medication because the pain only lasted briefly when she lifted something and would continue to ache for a few minutes thereafter. Newell further testified that she had not sought any medical treatment recently because she was waiting on the outcome of her workers compensation claim. Newell stated that she would like to have surgery if it became necessary in the future because she was studying to be a paramedic, which would require use of both her arms.

The ALJ awarded Newell compensation based on a 9 percent functional impairment to the left arm, but he denied her request for future medical expenses based on a finding that Newell had failed to provide medical evidence to show that it was more probably true than not that future medical treatment would be required. Specifically, the

4

ALJ relied on Toby's opinion that it was more probable that Newell would not need additional medical treatment. Acknowledging that Fluter had provided a contrary opinion, the ALJ concluded:

> "Dr. Fluter's initial statement that it is more likely than not that Claimant would need future medical treatment and to continue to take anti-inflammatories and analgesics was refuted: by his statement 'I'm not sure what she would need'; by his acknowledgment that he did not know what medications she may or may not be taking; and by Claimant's testimony at Regular Hearing that she doesn't take anything for pain."

Newell appealed the ALJ's award to the Board, arguing in relevant part that she was entitled to future medical expenses. A majority of the Board reversed the ALJ's decision, finding that Newell was entitled to future medical expenses. Specifically, the majority held:

> "Dr. Toby's opinion regarding claimant's future medical needs hinged, or was contingent, on whether she worsened after the one time she saw him. Claimant testified her symptoms worsened. Thus, the contingency was fulfilled. Based on Dr. Toby's opinion, claimant is a candidate for wrist arthroscopy. She is entitled to future medical treatment."

Two Board members dissented on grounds that Newell had not proven her entitlement to future medical treatment. The dissent reasoned that Toby's conclusion that Newell would be entitled to future medical treatment if her condition worsened was based on a contingency that had not yet occurred based on consideration of all the credible evidence. Specifically, the dissent found Newell's testimony that her condition had worsened was self-serving and contrary to Newell's other testimony that her pain was brief, that she took no medication, and that she had not recently sought medical treatment.

5

Schwan's contends that the Board erred in its review of the award from the ALJ, and identifies a single issue on appeal—whether Newell is entitled to future medical treatment. It argues that the Board's decision was not supported by substantial competent evidence and the Board misapplied the provisions of K.S.A. 2015 Supp. 44-510h. In Schwan's view, the "plain language" of K.S.A. 2015 Supp. 44-510h runs counter to the Board's findings.

*Standard of review*

K.S.A. 2015 Supp. 44-556(a) directs that this court will review the Board's decisions in accordance with the provisions of the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq*. Schwan's argument concerning the sufficiency of the evidence requires a review of the record as a whole to determine whether the Board's factual determinations were supported by substantial evidence. K.S.A. 2015 Supp. 77-621(c)(7). That analysis requires us to (1) review evidence both supporting and contradicting the agency's findings, (2) examine the presiding officer's credibility determinations, if any, and (3) review the agency's explanation about why the evidence supports its findings. K.S.A. 2015 Supp. 77-621(d); *Williams v. Petromark Drilling*, 299 Kan. 792, 795, 326 P.3d 1057 (2014).

"Substantial evidence" is evidence possessing something of substance and relevant consequence to induce the conclusion that the award was proper, furnishing a basis of fact from which the issue raised could be easily resolved. *Ward v. Allen County Hospital*, 50 Kan. App. 2d 280, 285, 324 P.3d 1122 (2014). This court does not "weigh conflicting evidence except to determine whether the evidence supporting the Board's decision has been so undermined by conflicting evidence that we no longer have confidence in the substantial nature of the evidence." *Messner v. Continental Plastic Containers*, 48 Kan. App. 2d 731, 750, 298 P.3d 371, *rev. denied* 297 Kan. 1246 (2013).

*Discussion*

K.S.A. 2015 Supp. 44-510h(e) establishes a presumption that the employer's obligation to provide medical treatment will terminate when the employee reaches maximum medical improvement. That presumption can be overcome with medical evidence that it is "more probably true than not that additional medical treatment will be necessary" after the employee reaches maximum medical improvement. K.S.A. 2015 Supp. 44-510h(e). The statute defines "medical treatment" as "only that treatment provided or prescribed by a licensed health care provider and shall not include home exercise programs or over-the-counter medications." K.S.A. 2015 Supp. 44-510h(e).

In concluding that Newell overcame the presumption established by K.S.A. 2015 Supp. 44-510h(e), the Board majority relied on (1) Toby's testimony that if Newell's symptoms were to worsen, she would be a candidate for wrist arthroscopy and (2) Newell's testimony that her condition had, in fact, worsened.

Schwan's contends the Board erred in two respects: (1) Newell's testimony that her symptoms had worsened was unsupported by the weight of the evidence, *i.e.*, more persuasive contradictory evidence was not considered; and, (2) there was no medical opinion suggesting Newell's condition had worsened and her own testimony to that effect was not medical evidence.

Schwan's arguments are without merit. First, the Board clearly considered the evidence Schwan's suggests contradicts Newell's testimony, stating:

> "The Board recognizes claimant sought no medical treatment subsequent to January 2013 and she currently does not even take over-the-counter medication. However, claimant's testimony is that she is worse now, struggles daily and has burning, popping and pain when using her wrist. Such testimony is not so improbable as to not be

7

believed. Additionally, claimant will still need to prove her entitlement to any additional medical treatment upon proper application."

Newell's testimony regarding her symptoms and why she felt that her condition had gotten worse provided substantial evidence to support the Board's decision. This evidence was not undermined by Newell's failure to seek additional medical treatment or Newell's testimony that her pain was brief and did not require medication. Newell testified that she had not sought additional medical treatment because she was waiting on the outcome of her workers compensation claim. And, she explained that she did not take any medication because she did not suffer from the type of pain that required long-term pain medication. We are mindful of the statutory admonition that this court must decline any invitation to "reweigh the evidence or engage in de novo review." K.S.A. 2015 Supp. 77-621(d). The Board's conclusion was supported by substantial evidence.

Schwan's second argument is that K.S.A. 2015 Supp. 44-510h(e) requires proof, based on medical evidence, that it is "more probably true than not that additional medical treatment will be necessary" after the employee reaches maximum medical improvement. Here, the Board did not rely upon Newell's testimony that her condition was worsening as medical evidence. In fact, the Board explicitly stated that "[c]laimant's testimony that she wants future medical left open is not medical evidence. Only the medical experts provided medical evidence."

The Board did have medical evidence before it to support its decision that Newell was entitled to future medical expenses. Fluter examined Newell in July 2013, 1 year after her De Quervain's release surgery. Fluter testified that it was "more likely than not" that Newell would need additional medical treatment in the future. The Board noted that Fluter "recommended a wide variety of treatment options and testified [Newell] will likely need medical treatment in the future." Toby examined Newell in March 2014, leading to his opinion that Newell did not need additional treatment or surgery. The

8

Board, however, gave weight to Toby's further opinion that if Newell's symptoms got worse, she would be a candidate for wrist arthroscopy. As the Board presented its analysis, Toby set a contingency—if the symptoms worsen, further medical treatment would be needed. The Board accepted Newell's testimony about her condition, not as medical evidence to rebut the presumption, but as the fulfillment of the contingency.

The Board cited the medical evidence from Fluter supporting a need for future medical treatment. Further evidence from Toby was seen to be contingent—an if-then proposition in which Newell's own testimony was a factual, nonmedical component. The Board had substantial evidence, medical evidence, upon which it relied to support its finding concerning future medical treatment.

We find no error in the Board's decision to overturn the ALJ's denial of future medical treatment.

Affirmed.