NOT DESIGNATED FOR PUBLICATION

No. 126,486

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DONALD CREGGER,
*Appellee*,

v.

CLW FARMS, INC.
and
KANSAS WORKERS COMPENSATION FUND,
*Appellants*.


MEMORANDUM OPINION


Appeal from Workers Compensation Board. Submitted without oral argument. Opinion filed May 10, 2024. Affirmed.


*Kevin M. Fowler*, of Frieden & Forbes, LLP, of Topeka, for appellants.


*Jeff K. Cooper*, of Cooper Law Office, of Topeka, for appellee.


Before ARNOLD-BURGER, C.J., MALONE and WARNER, JJ.


PER CURIAM: The Kansas Workers Compensation Fund (the Fund) seeks review under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq., of an award issued by the Kansas Workers Compensation Appeals Board (the Board). The Board held that Donald Cregger, the claimant, was entitled to receive an award for work injuries and that the award was not subject to offset for preexisting functional impairment under K.S.A. 44-501(e)(1). The Fund claims that the Board misapplied the law or based its decision on a determination of fact unsupported by substantial evidence when viewed in light of the record as a whole. Cregger disagrees and argues that no sufficient competent medical

evidence supported an offset for preexisting functional impairment. For the reasons explained below, we reject the Fund's claim and affirm the Board's award to Cregger.

FACTUAL AND PROCEDURAL BACKGROUND

In 2020, Cregger worked for CWL Farms, Inc. (CWL) as a semi-truck driver. On March 11, 2020, Cregger climbed onto his trailer, slipped, and fell onto a concrete floor. The fall resulted in a broken tibial plateau near the left knee. Cregger was taken by ambulance to a hospital for treatment. On July 14, 2020, Cregger's injured knee was replaced. When Cregger was released to return to work in September 2020, he was informed that CLW sold the truck and trailer he had been operating and CLW no longer had a job for him. Cregger has not returned to work for any employer since March 2020.

Cregger also complained of back and right knee pain after the accident. Based on these injuries and complaints, he applied for workers compensation benefits. The Fund was impleaded as a party because CLW did not have workers compensation insurance. Both in deposition and at the hearing, Cregger testified that in 1996 he had suffered bilateral fractures to both tibias in a work-related accident for which he received workers compensation. That injury was settled with a 28% whole body impairment rating.

The administrative law judge (ALJ) considered reports and deposition testimony of three doctors, Pat Do, Pedro Murati, and Lowery Jones. Cregger told Jones that his right knee and back were what limited him rather than his surgically repaired left knee. Jones assessed Cregger's whole body functional impairment at 19%. In his report, Jones listed Cregger's medical history as including bilateral tibia fractures. Murati also testified that he knew of the 1996 injuries but determined that those injuries "were neither here nor there" and involved different body parts than Cregger's 2020 knee and back injuries.

2

After hearing the evidence, the ALJ adopted Jones' assessment of a 19% whole body functional impairment and found the Fund liable. The ALJ also found that the award was subject to offset under K.S.A. 44-501(e)(1) because of Cregger's 1996 injury and the resulting 28% whole body impairment, calculated to be $53,977.22. Cregger timely applied for the Board's review of the ALJ's decision, where he argued that the award was not subject to offset because the 28% impairment from the 1996 injury was not preexisting based on substantial competent evidence.

The Board upheld the ALJ's initial award, but reversed its determination that it should be offset by the 1996 impairment rating. In doing so, the Board found that no evidence showed the 1996 injuries were to the same body parts as the new injuries. More specifically, the Board found:

"The ALJ stated 'In calculating Cregger's Award for permanent total disability, the previous Award of a 28% whole body functional impairment must be considered.' The Board agrees with this premise, but the Fund is still responsible with providing evidence it is more probably true than not they are entitled to the credit and the specifics regarding how much of a credit should be applied to the award.

"K.S.A. 44-501(e)(1) states the percentage basis of a prior Kansas settlement or award shall conclusively establish the amount of functional impairment determined to be preexisting. Worksheets for settlements with attached medical records are available and obtained from the Kansas Division of Workers Compensation. No worksheet for settlement for the 1996 work accident was entered into the record. None of the medical evidence opined Claimant's 1996 injuries were connected to his March 11, 2020 work injuries.

"The only evidence of a preexisting condition in this case comes from Claimant's testimony, and he said he had 28% whole body functional impairment from injuries sustained to his lower legs in 1996. Claimant testified the right leg was injured worse than the left. No specific information was provided as to what body parts were rated, how they were rated individually and converted to a 28% whole body rating. It appears

3

Claimant's current injuries are to different body parts than what he received compensation for in the 1996 claim, but the current record is insufficient to this information. This lack of information renders it impossible to apply the preexisting credit to this case. Claimant's recollection of an injury, occurring more than twenty-five years ago, without any supporting evidence, does not meet the standard of competent evidence. Accordingly, the Board finds the Fund failed to meet their burden of proof establishing their right to a preexisting credit."

The Fund timely sought judicial review of the Board's decision. The only issue on appeal is whether the Board erred in vacating the ALJ's offset to Cregger's award based on the 28% whole body impairment rating from the 1996 injury.

ANALYSIS

The Fund claims the Board erroneously interpreted the law or acted based on a determination of fact that was unsupported by substantial evidence by concluding that Cregger's uncontroverted sworn testimony about his settlement of the prior workers compensation claim was not competent evidence to support the ALJ's decision to adjust Cregger's award of permanent total disability. The Fund claims the Board's decision should be reversed under K.S.A. 77-621(c)(4) and (7), which provides:

> "(c) The court shall grant relief only if it determines any one or more of the following:
> . . . .
> (4) the agency has erroneously interpreted or applied the law;
> . . . .
> (7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act."

The KJRA governs this court's review of cases arising under the Workers Compensation Act. K.S.A. 44-556(a). Appellate courts review a challenge to the Board's factual findings in light of the record as a whole to determine whether the findings are supported to the appropriate standard of proof by substantial evidence. See K.S.A. 77-621(c)(7). "Substantial evidence" refers to "'"evidence possessing something of substance and relevant consequence to induce the conclusion that the award was proper, furnishing a basis [of fact] from which the issue raised could be easily resolved." [Citation omitted.]'" *Rogers v. ALT-A&M JV LLC*, 52 Kan. App. 2d 213, 216, 364 P.3d 1206 (2015). The Fund's claim also involves statutory interpretation, which this court reviews de novo. *Bruce v. Kelly*, 316 Kan. 218, 224, 514 P.3d 1007 (2022).

The Fund claims that the Board erred by finding that insufficient evidence supported the ALJ's determination that Cregger's award was subject to offset by 28% because of the preexisting injuries and award obtained in 1996. At the hearing, Cregger testified that his 1996 work injuries resulted in a 28% impairment for which he was awarded compensation. Cregger also testified in his deposition about the injuries and that he was compensated for them, but he did not recall his impairment rating at that time. The Fund mainly argues that Cregger's testimony is substantial competent evidence to show that his 1996 impairment rating should offset the new award.

The Fund relies on the statutory language of K.S.A. 44-501(e)(1), which states:

"(e) An award of compensation for permanent partial impairment, work disability, or permanent total disability shall be reduced by the amount of functional impairment determined to be preexisting. Any such reduction shall not apply to temporary total disability, nor shall it apply to compensation for medical treatment.

(1) Where workers compensation benefits have previously been awarded through settlement or judicial or administrative determination in Kansas, the percentage basis of the prior settlement or award shall conclusively establish the amount of functional impairment determined to be preexisting. Where workers compensation benefits have not

previously been awarded through settlement or judicial or administrative determination in Kansas, the amount of preexisting functional impairment shall be established by competent evidence."

Under K.S.A. 44-501(e)(1), an award of compensation must be reduced by the amount of functional impairment found to be preexisting. The respondent in a workers compensation case has the burden of proving the amount of preexisting impairment to be deducted. *Ward v. Allen County Hospital*, 50 Kan. App. 2d 280, 288, 324 P.3d 1122 (2014). "Burden of proof" generally means the burden of a party to persuade the trier of facts by a preponderance of the credible evidence that the party's position on an issue is more probably true than not based on the whole record. K.S.A. 44-508(h).

The Fund argues that the statute requires an offset in Cregger's case because a new award "shall be" reduced by the amount of functional impairment determined to be preexisting and because the prior impairment rating shall conclusively establish the amount of offset. Stated another way, Cregger testified about the 1996 impairment rating, and the Fund claims that the Board was required to use that evidence to uphold the offset.

In rejecting that argument, the Board noted that no worksheet for the 1996 work accident was entered into the record. In the absence of these records and because none of the medical evidence presented by the parties showed that Cregger's 1996 injuries were connected to his current injuries, the Board determined it was "impossible to apply the preexisting credit to this case." The Board expressly rejected the Fund's claim that Cregger's testimony alone, without any supporting evidence, was competent evidence to uphold the ALJ's offset for preexisting functional impairment.

Cregger agrees with the Board and cites *Weaver v. Unified Government of Wyandotte County*, 63 Kan. App. 2d 773, 790-98, 539 P.3d 617 (2023), to support his position. Weaver, like Cregger, suffered a prior work injury and received compensation.

After sustaining a new work injury, Weaver filed another claim. The Board did not offset Weaver's new award under K.S.A. 44-501(e) based on the percentage of impairment resulting from his prior injury. Instead, the Board upheld the ALJ's decision that although there were prior injuries, no doctor found that they affected the new injury or new impairment ratings. Thus, the Board found that the prior injuries were not preexisting to the new injury and K.S.A. 44-501(e) did not apply.

On appeal, Wyandotte County argued, like the Fund argues here, that evidence of the prior injury itself was enough to trigger K.S.A. 44-501(e) and require an offset based on the prior impairment rating. The *Weaver* court found that Wyandotte County's interpretation of the statute was too broad and "would require a reduction of benefits for a new impairment even though it is unrelated to a preexisting impairment, just because the impairments are in the same bodily extremity." 63 Kan. App. 2d at 794. Instead, the court found that "[t]he determination whether a claimant's functional impairment, or any part of it, is preexisting, is a medical determination." 63 Kan. App. 2d at 795. None of Weaver's doctors testified that the separate injuries caused any overlapping impairment. The court concluded: "The record lacks any evidence that Weaver's prior impairments had any relation to the impairments caused by his current accident. Thus, Wyandotte County has not shown that any impairments from Weaver's August 2018 injury were preexisting as that term is used in K.S.A. 44-501(e)." 63 Kan. App. 2d at 797.

Under *Weaver*, a claimant's testimony alone that they received a functional impairment rating in a prior workers compensation case is insufficient evidence to establish an offset under K.S.A. 44-501(e). Instead, the determination whether a claimant's functional impairment is preexisting is a medical determination. The burden is on the respondent to provide medical evidence to support a finding that the claimant's current impairment is, in fact, related to the prior injury. Assuming substantial evidence is provided, the statute provides the percentage basis of any prior settlement or award shall conclusively establish the *amount* of functional impairment determined to be preexisting.

7

Turning to *Weaver*'s application here, Cregger bilaterally fractured his tibias in 1996. Several doctors noted these injuries in their reports, and Cregger disclosed them in his testimony. But no doctor found that the 1996 injury or the resulting impairment affected Cregger's new impairment. Murati went further by testifying, "Yeah, that I knew, that he had suffered bilateral tib-fib fractures. But that's neither here nor there. We're not dealing with the legs in this condition. We're dealing with his knees and back." Applying the analysis in *Weaver*, there is no evidence in the record suggesting that Cregger's 1996 injury was determined to be "preexisting as that term is used in K.S.A. 44-501(e)." See 63 Kan. App. 2d at 797. Had substantial evidence been provided, then Cregger's 28% whole body impairment rating from the 1996 injury would have conclusively established the *amount* of functional impairment determined to be preexisting. But without medical evidence showing the injuries are related, there is no basis for any offset.

In its reply brief, the Fund argues that *Weaver* is distinguishable because that case did not involve whole body impairment like in Cregger's case. But this attempt to distinguish the cases is not persuasive. K.S.A. 44-501(e) does not distinguish between types of impairment. Rather, it uniformly states that the "percentage basis of the prior settlement or award shall conclusively establish the amount of functional impairment determined to be preexisting." K.S.A. 44-501(e)(1). So no matter what type of impairment is involved, its percentage in a prior case establishes only the amount of the offset in the current case, but not that the impairment is, in fact, preexisting.

Also in its reply brief, the Fund argues that Cregger failed to provide enough evidence to meet his own burden to show his award is not subject to offset, citing the claimant's overall burden of proof under K.S.A. 44-501b(c). The Fund argues that because there is no medical determination that the new impairment is "'over and above'" the old impairment, Cregger failed to provide sufficient evidence. But as the Board correctly found, the respondent in a workers compensation case has the burden of proving the amount of preexisting impairment to be deducted. See *Ward*, 50 Kan. App. 2d at 288.

And even if we would shift that burden to Cregger, Murati explicitly testified that there was no connection between the impairment in the two cases because the injuries were to different parts of the body. Thus, the only direct evidence in the case established that Cregger's new impairment was unrelated to his prior injury and was therefore not preexisting.

Finally, in its reply brief, the Fund points out that no evidence shows that the doctors were aware of the prior 28% impairment rating and instead only knew about the injuries themselves. But the Fund does not explain how this point is relevant. The record shows that Cregger disclosed his 1996 injuries and that the doctors, in their evaluations, determined those injuries to be of no significance to his new injuries and impairment. The Fund does not point to any law requiring disclosure of prior impairment ratings and does not refute that the doctors' findings were made with the prior injuries in mind.

In sum, the Fund does not dispute that it failed to enter into the record the settlement worksheet for Cregger's 1996 work accident supporting the impairment rating in that case. Without some medical determination that Cregger's current impairment was preexisting, the Board correctly found that Cregger's award was not subject to an offset under K.S.A. 44-501(e). The Board did not erroneously interpret or apply the law and did not base its decision on a fact unsupported by substantial evidence when viewed in light of the record as a whole. The Fund has not shown error in the Board's decision.

Affirmed.