(180 P.3d 590)
No. 98,108

LINDA J. PAYNE, *Appellant*, v. THE BOEING COMPANY, KEMPER INSURANCE COS., and AMERICAN MFR. MUTUAL INS. CO., *Appellees*.

Opinion filed April 4, 2008.

*Michael L. Snider*, of Snider & Seiwert, L.L.C., of Wichita, for appellant.

*Stephen M. Kerwick* and *Eric K. Kuhn*, of Foulston Siefkin LLP, of Wichita, for appellees.

Before McANANY, P.J., CAPLINGER and BUSER, JJ.

McANANY, J.: In this case we are called upon to construe and to consider the constitutionality of statutory limits on workers compensation benefits received by an injured worker who has a pre-existing nonwork-related disability.

Linda J. Payne worked for the Boeing Company (Boeing) for 23 years. She had a history of low back problems which resulted in a microdiskectomy at the L5-S1 level in 1996. She experienced a disk herniation at that same level in 1998, causing her surgeon to redo her diskectomy in 1999. When this failed to provide relief, she had a fusion of these vertebral bodies and steroid injections. Then, in 2001, a spinal cord stimulator was implanted in her back.

In 2002, Payne reinjured her low back on the job and again in an automobile accident a few days later while returning from medical treatment for her back. It is undisputed that these 2002 injuries are compensable.

Payne applied for workers compensation benefits and was awarded temporary disability benefits. The administrative law judge (ALJ) held a hearing to determine, among other things, the nature and extent of Payne's disability. Payne testified that she made no workers compensation claim for her back condition that led to her surgeries beginning in 1996. After those surgeries her doctors released her with "a lot of restrictions." She returned to her previous position at Boeing, but the physical aspects of the job were not the same. She has acknowledged, "They always accommodated me."

Dr. Preston Brent Koprivica testified by deposition regarding his findings and expert opinions following two examinations of Payne. He testified that before 2002, Payne had "failed back syndrome," which he described as "an individual that is having severe disabling low back pain despite surgical intervention; and it's chronic in nature, lasting more than 12 months." Koprivica assigned a 35% impairment to Payne's condition prior to her injuries in 2002. In his opinion, Payne's 2002 work injury aggravated Payne's preexisting failed back syndrome, caused a 10% increased impairment, and caused her to become practically and realistically unemployable.

Boeing did not contest Payne's permanent total disability but claimed her award must be reduced based on her preexisting functional impairment in accordance with K.S.A. 44-501(c). Payne argued her award should not be reduced because she was able to work until her 2002 injury, she was never determined to be disa-

bled prior to this injury, and she was never awarded disability payments for her preexisting condition. She also argued it was unconstitutional to reduce her disability payments based on her preexisting condition.

The ALJ found that Payne was permanently and totally disabled, but that her disability award should be reduced under K.S.A. 44-501(c) because of her 35% preexisting functional impairment. The ALJ determined Payne would have received 299.76 weeks of payment at her weekly rate of $417 before reaching the $125,000 maximum award for a permanent total disability. See K.S.A. 44-510c; K.S.A. 44-510f. The ALJ then calculated that a 35% functional impairment would entitle an employee to a partial impairment award of 145.25 weeks of payment. See K.S.A. 44-510e. Subtracting these 145.25 weeks from the 299.76 weeks of permanent total disability payments resulted in an award of 154.51 weeks, or $64,430.67, less amounts previously paid.

Payne appealed to the Kansas Workers Compensation Board (Board) arguing that her award should not be reduced based on her preexisting condition. She argued in the alternative that if her payments are reduced, then pursuant to *McIntosh v. Sedgwick County*, 282 Kan. 636, 147 P.3d 869 (2006), her reduced payments should continue until she reaches the $125,000 maximum payout for permanent and total disabilities. A majority of the Board agreed with neither argument and affirmed the ALJ's decision. This appeal followed.

### K.S.A. 44-501(c)

Statutory interpretation is an issue of law over which we exercise de novo review. However, the doctrine of operative construction requires us to defer to the Board's interpretation of the Workers Compensation Act if there is a rational basis for it. This is not to say that the Board's interpretation is conclusive. It is persuasive but not binding upon us. If the Board's interpretation is erroneous as a matter of law, we will intervene to correct it. Since Payne challenges the Board's interpretation, she bears the burden of proving its invalidity. See *McIntosh*, 282 Kan. at 641.

K.S.A. 44-501(c) states: "The employee shall not be entitled to recover for the aggravation of a preexisting condition, except to the extent that the work-related injury causes increased disability. Any award of compensation shall be reduced by the amount of functional impairment determined to be preexisting."

Payne argues that the second sentence of K.S.A. 44-501(c) should be interpreted to mean that a reduction is permitted if there has been a prior *award* for a functional impairment of a preexisting condition. Payne's interpretation is essentially a redrafting of the statute. As written, the statute is not predicated upon there being a prior award, only a preexisting functional impairment. The sole medical testimony in this case established and measured the extent of this preexisting functional impairment. The statute applies to Payne as written. As a final comment on this argument, we note that Payne's narrow reading of K.S.A. 44-510c and K.S.A. 44-510f(a), *i.e.*, that her disability award should continue for the duration of her disability up to the $125,000 cap on total benefits, ignores the overarching effect of K.S.A. 44-501(c) on her preexisting functional impairment.

Citing the testimony of Dr. Koprivica, Payne next argues that K.S.A. 44-501(c) does not apply to reduce her award because she was able to resume her normal duties after her back surgeries and it was her injury in 2002 that caused her disability. K.S.A. 44-501(c) permits an award to the extent the work-related injury causes increased disability to a preexisting condition. However, the statute also requires any award to be reduced by the amount of any preexisting functional impairment. Payne had a substantial impairment prior to her work injury. Though she returned to work after her surgeries, her work did not involve the same "physical aspect." She returned to work with "a lot of restrictions," and Boeing accommodated her restrictions. The only medical testimony on record evaluated her preexisting functional impairment to be 35%. K.S.A. 44-501(c) applies to reduce her award.

Finally, Payne relies on *Hanson v. Logan U.S.D. 326*, 28 Kan. App. 2d 92, 96, 11 P.3d 1184 (2000), *rev. denied* 270 Kan. 898 (2001), for the proposition that Boeing has the burden to prove the amount of Payne's preexisting impairment once she presents

evidence of aggravation of a preexisting condition. Payne argues that Boeing failed to meet this burden since it failed to provide any evidence that her preexisting functional impairment contributed to her permanent total disability, and since it failed to demonstrate that her current disability was caused by any injury other than her current job injury.

In *Hanson*, the employee injured his knee at work and underwent knee replacement surgery. Prior to this work injury, Hanson had several knee surgeries and suffered from a degenerative condition that ultimately would have required a total knee replacement. Nevertheless, this court affirmed the Board's decision not to reduce Hanson's award because the record lacked any evidence of the amount of preexisting disability or impairment. 28 Kan. App. 2d at 96. Unlike in *Hanson*, there is ample evidence here of Payne's preexisting disability. Dr. Koprivica testified to Payne's preexisting 35% functional impairment. Further, Payne herself testified that she was able to return to work because of Boeing's accommodations to her many work restrictions. There was ample evidence to support the Board's reduction of Payne's award based on her preexisting condition.

### McIntosh

In the alternative, Payne argues that if her award is reduced pursuant to K.S.A. 44-501(c), the duration of payments should be extended until she has received the maximum benefit of $125,000, just as was ordered in *McIntosh*.

Willie McIntosh worked as a security officer for Sedgwick County. Upon reaching age 65, McIntosh began receiving social security retirement benefits, though he continued to work full-time for the County. Two months before his anticipated retirement date, McIntosh became permanently and totally disabled due to a work-related injury. The Board determined that the County, in calculating McIntosh's workers compensation benefits, was not entitled to offset the social security retirement benefits he received. This court reversed the Board, finding that the offset provisions of K.S.A. 44-501(h) applied, and remanded the case to the Board to

recalculate McIntosh's benefits. *McIntosh v. Sedgwick County*, 32 Kan. App. 2d 889, 91 P.3d 545, *rev. denied* 278 Kan. 846 (2004).

Upon remand the Board recalculated McIntosh's benefits by offsetting the amount of social security benefits he received and terminated his benefits before the $125,000 benefit cap was reached. On appeal, this court reversed, *McIntosh v. Sedgwick County*, 34 Kan. App. 2d 684, 123 P.3d 740 (2005), and the Supreme Court affirmed this decision. *McIntosh*, 282 Kan. at 640, 649-50.

The driving force behind all these *McIntosh* opinions is that the purpose of the offset provision of K.S.A. 44-501(h) is to prevent wage-loss duplication, which is best achieved by reducing a claimant's weekly benefits by the amount of retirement benefits received for the same period. Payne's circumstances are not comparable. Sedgwick County was responsible for the entirety of McIntosh's disability. His disability was not the result of an aggravation of a preexisting nonwork-related injury. He was entitled to the entirety of the benefits provided for in the statute. However, the time for receiving the maximum benefit under the statute was deferred to the extent that he received offsetting wage-replacement benefits in the form of social security payments. In other words, he received smaller weekly payments for his disability, but the period of these payments continued until he reached the $125,000 statutory maximum.

On the other hand, Boeing is not responsible for the entirety of Payne's disability. It is responsible for only the portion caused by her 2002 job-related injury. Payne's reduced benefits are not due to the offsetting of other wage-replacement benefits, such as McIntosh's retirement benefits. Payne's reduced benefits are due to the fact that only a portion of her disability is attributable to her job-related injury. The period for payment of McIntosh's reduced benefits was extended because the County was responsible for the whole of McIntosh's disability. Boeing is not responsible for the whole of Payne's disability. *McIntosh* does not apply.

Is this interpretation consistent with the intent of the legislature? Before 1993, the employer bore the risk of employing someone with a preexisting disability. See *Demars v. Rickel Manufacturing*

*Corporation,* 223 Kan. 374, 376-77, 573 P.2d 1036 (1978). In 1993, K.S.A. 44-501(c) was amended. L. 1993, ch. 286, sec. 24. In general, the 1993 amendments were enacted to reduce the cost of workers compensation insurance premiums. See *Dickens v. Pizza Co.,* 266 Kan. 1066, 1071, 974 P.2d 601 (1999). K.S.A. 44-501(c) was one aspect of that effort. The Board's application of K.S.A. 44-501(c) to reduce Payne's award based on her preexisting functional impairment is consistent with this legislative intent.

Payne's final challenge to the method of the Board's calculation is her claim that Boeing received credit for Payne's preexisting disability based on her 2002 pay rate, not her pay rate in 1996 when this preexisting disability first manifested itself. She argues that if she had been compensated for her injury in 1996, her award would have been based on a lower weekly salary, so it is unfair to reduce her award now based on her 2002 weekly salary. Payne's argument is predicated upon the application of K.S.A. 44-510a to her claim. K.S.A. 44-510a specifically applies to situations in which an employee has received compensation for a prior disability. A reduction in benefits is calculated according to the statute to prevent overlapping benefits, *i.e.,* where benefits from the prior injury would otherwise continue after the later injury. Here, Payne's prior disability was never established to be work related and no claim was ever filed. Accordingly, there are no overlapping benefits. When asked if she filed a workers compensation claim for her prior back problem, Payne testified: "No. Because I couldn't pinpoint it to that. It was just, why is my back hurting." Adopting Payne's argument would require us to speculate on the disposition of a claim that was never filed. K.S.A. 44-510a does not apply. On the other hand, K.S.A. 44-501(c) requires an award to be reduced by the amount of preexisting functional impairment. The credit applied to Payne's benefits was calculated based upon her medical status immediately before her 2002 back injury. The Board did not err in its calculation of this reduction.

*Constitutionality of K.S.A. 44-501(c)*

Payne argues that the second sentence of K.S.A. 44-501(c), as applied to her, does not meet the rational basis test and violates

the due process protection of the Kansas Constitution Bill of Rights, § 18 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. This is an issue of law over which we exercise unlimited review. In reviewing this statute we presume that it is constitutional and resolve all doubts in favor of its validity. We will construe the statute as constitutional if there is any reasonable way to do so. Payne's claimed constitutional violation must be clear before we will strike down the statute. See *Injured Workers of Kansas v. Franklin*, 262 Kan. 840, 844, 942 P.2d 591 (1997).

The rational basis test, which is part of an equal protection analysis, examines whether the legislature treats two indistinguishable classes of individuals differently. 262 Kan. at 847. Under the rational basis test, "a law is constitutional, despite some unequal classification of citizens, if the 'classification bears some reasonable relationship to a valid legislative objective.' [Citation omitted.]" 262 Kan. at 847.

Payne argues that had she simply made a claim for a 10% permanent partial disability, her compensation benefits would have been greater than her award under the Board's application of K.S.A. 44-501(c). Unfortunately for Payne, this argument highlights the fact that the statutory scheme treats members of different classes of claimants differently, not members of the same class differently. In other words, the statute treats persons with preexisting disabilities differently than persons with no preexisting disabilities. If we consider both classes as being comprised of persons who suffered the same job-related injury, we are still confronted with the distinction between the members of one class who brought to their work-related injury a preexisting nonwork-related condition and those who did not.

As noted earlier, our construction of K.S.A. 44-501(c), which was enacted in 1993, is consistent with other changes at the time to our workers compensation law which were designed to reduce the cost of workers compensation insurance to Kansas employers. To the extent that the promotion of business in Kansas through restraints on labor costs is a legitimate State concern, K.S.A. 44-501(c) bears a reasonable relationship to this valid legislative objective. The ap-

plication of K.S.A. 44-501(c) to Payne does not violate her right to the equal protection of the laws.

Next, Payne argues the statute violates her right to due process. If a remedy protected by due process is abrogated or restricted by the legislature, the change is constitutional if (1) the change is reasonably necessary in the public interest to promote the general welfare of the people of the state, and (2) the legislature provides an adequate substitute remedy to replace the remedy that has been restricted. *Franklin*, 262 Kan. at 854. As discussed earlier, K.S.A. 44-501(c) promotes the general welfare of the people of Kansas by lowering workers compensation premiums and keeping jobs in Kansas, thereby satisfying element (1) in this due process analysis.

With respect to element (2), providing an adequate substitute remedy, the legislature enacted our workers compensation laws beginning in 1911 as a substitute to common-law civil actions for on-the-job injuries. The issue now becomes whether the Workers Compensation Act has made it so difficult to receive a workers compensation award that it no longer satisfies due process as an adequate substitute remedy. See 262 Kan. at 881-82. In considering this question, the *Franklin* court concluded: "Neither the Act as a whole nor the individual 1993 amendments violate due process." 262 Kan. at 888.

Payne's argument on this issue returns to the claimed disparity between the award she would have received had she suffered a 10% functional impairment with no preexisting functional disability and her lesser award for permanent total disability with a preexisting functional disability. If Payne's prior disability was a job-related injury for which she simply failed to pursue a claim, she should not be heard to complain. She had an adequate remedy but chose not to exercise it. If her prior disability was due to an accident not related to her job, her remedy was an action against any responsible tortfeasor. If her prior disability was simply the product of a nonwork-related disease process, due process does not require that someone necessarily must pay. As applied to Payne, K.S.A. 44-

501(c) violates neither the constitutional requirement of equal protection nor the constitutional requirement of due process.

Affirmed.