No. 112,490

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DANIEL ANTHONY BALLARD,
*Appellant*,

v.

DONDLINGER & SONS CONST. CO. and
ZURICH AMERICAN INSURANCE CO.,
*Appellees*.

SYLLABUS BY THE COURT

1.

Appellate courts have unlimited review of questions involving the interpretation or construction of a statute, owing no significant deference to an agency's or a board's interpretation or construction.

2.

When a statute is plain and unambiguous, an appellate court must give effect to its express language rather than determine what the law should or should not be.

3.

When a worker's job duties aggravate or accelerate an existing condition or disease, the injured worker's compensation is statutorily limited to any increase in the amount of his or her functional impairment associated with the aggravation.

4.

Both a permanent total disability and a permanent partial disability workers compensation award must be calculated before any reduction for preexisting functional impairment can be made.

1

5.

Under K.S.A. 44-504(a), injured workers may receive workers compensation benefits from their employers without compromising their right to pursue independent legal actions against third parties potentially liable for the injuries. However, K.S.A. 44-504(b) provides that in the event of a recovery from such a third party by the injured worker by judgment, settlement, or otherwise, the employer shall be subrogated to the extent of the compensation and medical aid provided by the employer to the date of such recovery and shall have a lien against the entire amount of such recovery, excluding any recovery determined by a court to be loss of consortium or loss of services to a spouse.

Appeal from Workers Compensation Board. Opinion filed August 21, 2015. Affirmed in part, reversed in part, and remanded with directions.

*W. Walter Craig*, of Derby, for appellant.

*John D. Jurcyk* and *Adam M. Brillhart*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellees.

Before STANDRIDGE, P.J., BRUNS, J., and HEBERT, S.J.

STANDRIDGE, J.:  Following remand by our court, this workers compensation case is before us for the second time. Daniel Anthony Ballard appeals the order of the Workers Compensation Board (Board) awarding benefits after he suffered injuries while working for his former employer, Dondlinger & Sons Construction Company, Inc. (Dondlinger). Ballard contends the Board erred in (1) calculating his permanent total disability award pursuant to the methodology set forth in *Payne v. Boeing Co.*, 39 Kan. App. 2d 353, 180 P.3d 590 (2008), and (2) determining that Dondlinger was entitled to a subrogation credit against future compensation payments equal to the amount Ballard received from a third-party settlement.

FACTS

Ballard began working for Dondlinger in 2003. In December 2007, Ballard injured his neck while working and later settled a disability claim with Dondlinger, which included a lump sum payment for a 25% permanent partial general disability. In October 2010, Ballard was injured in an automobile accident while working for Dondlinger. As a result, Ballard aggravated his preexisting cervical condition and also injured his lumbar spine and left elbow.

Ballard filed a workers compensation application following his 2010 injury. The administrative law judge (ALJ) found that Ballard sustained a permanent partial work disability of 87.5%, based on a 100% wage loss and a 75% task loss. The ALJ also found that Ballard had a preexisting functional impairment of 25%. The ALJ then calculated the amount of Dondlinger's credit under K.S.A. 2010 Supp. 44-501(c) for Ballard's preexisting impairment and the corresponding reduction in Ballard's award. In doing so, the ALJ reduced Ballard's work disability to 62.5% by subtracting the 25% preexisting impairment from Ballard's 87.5% work disability. After factoring Ballard's reduced work disability into the permanent partial disability computation, the ALJ found that Ballard was still entitled to a statutorily capped, maximum award of $100,000.

Dondlinger filed an application for review by the Board. The Board affirmed the ALJ's findings in all respects. Dondlinger appealed to this court, arguing in relevant part that the Board erred in calculating the reduction in Ballard's award under K.S.A. 2010 Supp. 44-501(c) for his preexisting functional impairment. Specifically, Dondlinger alleged that the four-step method approved by *Payne* to calculate the amount of Ballard's benefit should have been used. In *Ballard v. Dondlinger & Sons Constr. Co., Inc.*, No. 109,905, 2014 WL 1887654 (Kan. App. 2014) (unpublished opinion), a panel of this court affirmed in part, reversed in part, and remanded the case to the Board. Relevant to the present appeal, the panel held that the Board erred in calculating Ballard's

compensation award but rejected Dondlinger's argument that the methodology approved in *Payne* should be followed. Relying on the decision issued the same day in *Ward v. Allen County Hospital*, 50 Kan. App. 2d 280, 324 P.3d 1122 (2014), the panel concluded that K.S.A. 2010 Supp. 44-501(c) required the Board to reduce Ballard's $100,000 statutorily capped award by his 25% preexisting functional impairment. *Ballard*, 2014 WL 1887654, at *4-8.

While the prior appeal was pending before this court, two relevant events occurred. First, Ballard filed an application for review and modification of his workers compensation award. Following a hearing, the ALJ found that Ballard was now permanently and totally disabled as a result of the 2010 automobile accident. Second, Dondlinger filed with the ALJ a motion for allocation of third-party recovery based on Ballard's receipt of an insurance indemnity award from the other driver involved in the 2010 accident. The ALJ denied the request due to the pending appeal. Dondlinger requested review by the Board of each of these rulings.

The Board, by order and agreement of the parties, consolidated the issue presented for decision on remand from the Court of Appeals—how to calculate Dondlinger's credit for Ballard's 25% preexisting functional impairment—with Dondlinger's request for review of the ALJ's rulings related to whether Ballard was permanently and totally disabled and whether Dondlinger was entitled to a subrogation credit based on Ballard's third-party recovery. First, the Board concluded that Ballard was permanently and totally disabled. Based on Ballard's permanent and total disability, a majority of the Board then followed the four-step method approved by *Payne* to calculate the amount of Ballard's award, which resulted in a total award of $68,457.45. The Board also found that Dondlinger was entitled to a subrogation credit in the amount of $29,240.02 against future medical and compensation benefits based on Ballard's settlement with the other driver involved in the 2010 accident. Two Board members dissented from the majority's calculation of Ballard's award. Instead of using the *Payne* methodology, the dissent

4

advocated for the calculation method used in *Ward*, which would result in a total award of $93,250.

ANALYSIS

On appeal, Ballard raises two challenges to the Board's order. First, Ballard contends the Board erred in calculating his permanent total disability award pursuant to the methodology set forth in *Payne*. Second, he argues the Board erred in determining that Dondlinger was entitled to a subrogation credit against future compensation payments equal to the amount of his third-party settlement.

The Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq.*, governs this court's standard of review for cases under the Workers Compensation Act (Act), K.S.A. 44-501 *et seq*. See K.S.A. 2014 Supp. 44-556(a); K.S.A. 2014 Supp. 77-618(a). The standard of review varies depending upon the issue raised. See K.S.A. 2014 Supp. 77-621 (defining and limiting scope of review of administrative decisions under KJRA). Our review of Ballard's arguments on appeal involves statutory interpretation of certain provisions of the Act. Previously, Kansas courts generally gave deference to an administrative agency's interpretation of a statute that the agency administers, especially when the agency was one of special competence and experience. See, *e.g.*, *Coma Corporation v. Kansas Dept. of Labor*, 283 Kan. 625, 629, 154 P.3d 1080 (2007). Now, however, the appellate courts no longer extend deference to an agency's statutory interpretation. *Douglas v. Ad Astra Information Systems*, 296 Kan. 552, 559, 293 P.3d 723 (2013) (doctrine of operative construction has "been abandoned, abrogated, disallowed, disapproved, ousted, overruled, and permanently relegated to the history books"); *In re Tax Appeal of LaFarge Midwest*, 293 Kan. 1039, 1044, 271 P.3d 732 (2012) (noting that the doctrine of operative construction has lost favor). Accordingly, appellate courts have unlimited review of questions involving the interpretation or construction of a statute, owing "'[n]o significant deference'" to an agency's or a board's

5

interpretation or construction. *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs.*, 290 Kan. 446, 457, 228 P.3d 403 (2010). In workers compensation cases, the statutes in effect at the time of the claimant's injury govern the rights and obligations of the parties. As a result, we will apply the statutes in place when Ballard sustained his 2010 aggravation injury. See *Bryant v. Midwest Staff Solutions, Inc.*, 292 Kan. 585, 587-89, 257 P.3d 255 (2011).

1. *Calculating Ballard's permanent total disability award*

Ballard argues the Board erred in calculating his permanent total disability award. Specifically, Ballard contends the Board's use of the *Payne* methodology to calculate Dondlinger's credit for his preexisting functional impairment is contrary to this court's directions on remand and contrary to legislative intent because it results in an unjust award.

Under the Act, the amount of compensation an injured worker is entitled to receive depends upon the nature of his or her disability. *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 522, 154 P.3d 494 (2007). Claimants suffering from a permanent total disability are treated differently under the Act from those who have a permanent partial disability. Permanent partial disability awards are paid based upon the formula set forth in K.S.A. 44-510e(a), and such payments shall not exceed 415 weeks. *McIntosh v. Sedgwick County*, 282 Kan. 636, 646, 147 P.3d 869 (2006). Permanent partial disability benefits are capped at $100,000. K.S.A. 44-510f(a)(3). Permanent total disability awards are paid based upon the formula set forth in K.S.A. 44-510c(a)(1). Such payments continue for the duration of the disability, subject to review and modification. K.S.A. 44-510c(a)(1). Permanent total disability awards are capped at $125,000. K.S.A. 44-510f(a)(1).

When Ballard's appeal was before this court the first time, it was a permanent partial disability case. Relying on *Ward*, the panel held that the Board misinterpreted

K.S.A. 2010 Supp. 44-501(c), and, as a result, did not apply the correct standard to reduce Ballard's award due to his preexisting functional impairment. See *Ballard*, 2014 WL 1887654, at *7-8. During the pendency of the appeal, however, the nature of Ballard's injury changed to a permanent total disability effective October 2, 2012. As such, the Board concluded on remand that rather than calculating Ballard's entire award pursuant to the methodology in *Ward*, his permanent total disability award should instead be calculated according to the methodology set forth in *Payne*.

a. Payne *and* Ward

In order to properly evaluate the Board's ruling, we must review the *Payne* and *Ward* decisions in some detail. In *Payne*, decided in 2008, this court affirmed the ALJ's calculation of the claimant's compensation award. 39 Kan. App. 2d at 356-60. The ALJ calculated the claimant's compensation award by determining the amount of weeks it would have taken her to reach the statutory maximum award for a permanent total disability. Based on the statutory maximum of $125,000, it would have taken the claimant 299.76 weeks of payments at her average weekly rate of $417 before reaching the statutory maximum amount of $125,000. The claimant's medical evidence showed she had suffered 35% impairment to her body as a whole because of a preexisting back condition and 10% increased impairment due to a later work-related aggravation.

The claimant's employer did not dispute that she was permanently and totally disabled but argued that her award should be reduced under K.S.A. 44-501(c) because of her preexisting 35% impairment (415 weeks x 35% = 145.25 weeks). "Subtracting these 145.25 weeks from the 299.76 weeks of permanent total disability payments resulted in an award of 154.51 weeks, or $64,430.67, less amounts previously paid." 39 Kan. App. 2d at 356. A majority of the Board affirmed the ALJ's calculation. The *Payne* court affirmed the Board's decision, concluding that the claimant was not entitled to the

statutory maximum because her compensation award had to be reduced by her 35% preexisting functional impairment. 39 Kan. App. 2d at 357-58.

In *Ward*, decided in 2014, the claimant sought workers compensation benefits for a 2010 cervical spine injury she sustained while working at the hospital. The ALJ concluded that the claimant suffered a 75.75% permanent partial general disability and awarded the claimant permanent partial disability compensation for a 75.50% work disability up to the maximum compensation award of $100,000. On review, the Board reduced the award to reflect credit for the claimant's 15% preexisting functional impairment due to a 2003 cervical spine injury. Rather than reducing the claimant's award by 15%, a majority of the Board subtracted 15% from the claimant's work disability percentage. As a result, the majority determined that the claimant was entitled to compensation for a 60.75% work disability, which still resulted in her receiving the maximum compensation award of $100,000. One Board member dissented from the majority's calculation of the claimant's award as contrary to the plain language of K.S.A. 44-501(c), which states that "[a]ny award of compensation shall be reduced by the amount of functional impairment determined to be preexisting." The dissent noted that in cases, like Ward's, where the work disability value exceeds the maximum compensation cap, the compensation award is not reduced, contrary to the legislative intent of K.S.A. 44-501(c). Thus, in order to comply with the statutory directive, the dissent argued that the Board should have reduced the claimant's $100,000 award by the percentage of functional impairment (15%) to arrive at a reduced award of $85,000.

On appeal to this court, the *Ward* panel adopted the dissent's method of calculation. Citing the express language of K.S.A. 44-501(c), the panel concluded that the statute required that "a compensation award must be calculated before any reduction is made." 50 Kan. App. 2d at 290. Accordingly, the *Ward* panel held that the $100,000 award had to be reduced by 15% to reflect the claimant's preexisting functional impairment. 50 Kan. App. 2d at 294. The *Ward* panel concluded its opinion by stating

8

that this method of calculation "should be applied in situations only when a claimant's work disability value exceeds the statutory maximum compensation cap and when claimant will reach or attain the statutory maximum compensation cap before the statutory maximum number of weeks have been exhausted." 50 Kan. App. 2d at 294. Judge Leben concurred with the majority opinion, "express[ing] no opinion on how K.S.A. 44-501(c) should be applied in other circumstances, such as when the award would not otherwise exceed the statutory maximum." 50 Kan. App. 2d at 294-95.

On the same day that *Ward* was decided, this court issued its opinion in two other permanent partial disability cases, Ballard's previous appeal and *Jamison v. Sears Holding Corp.*, No. 109,670, 2014 WL 1887645 (Kan. App. 2014) (unpublished opinion). Both cases expressly declined to follow the *Payne* methodology in calculating the claimants' permanent partial disability awards and instead adopted the method set forth in *Ward*. See *Ballard*, 2014 WL 1887654, at *7-8; *Jamison*, 2014 WL 1887645, at *6-10.

b. *The Board's ruling on remand*

Following remand in the present case, the Board majority applied this court's directive with respect to Ballard's permanent partial disability award from October 19, 2010 (the accident date), to October 2, 2012 (effective date of modification award), finding that Ballard was entitled to a total award of $75,000 ($100,000 statutory maximum minus 25% preexisting functional impairment) payable at the rate of $545 per week. From October 2, 2012, forward, however, the Board majority held that Ballard's permanent total disability award must be reduced by the credit for preexisting impairment methodology set forth in *Payne*, resulting in a total award of $68,457.45. The majority calculated Ballard's permanent total disability award as follows:

9

"a. $125,000 (maximum for awards of permanent total disability) divided by the compensation rate of $545 equals 229.36 weeks.

"b. 25% of 415 weeks equals 103.75 weeks.

"c. 229.36 weeks minus 103.75 weeks equals 125.61 weeks.

"d. 125.61 weeks at $545 per week equals $68,457.45."

In reaching this decision, the majority noted that if Ballard had remained permanently partially disabled—rather than becoming permanently totally disabled as of October 2, 2012—his total award would be $75,000, an inequitable result that appeared contrary to the legislative intent that claimants with permanent total disabilities should receive more compensation than claimants with permanent partial disabilities. See K.S.A. 44-510f(a)(1) (maximum compensation benefits payable by employer for permanent total disability is $125,000); K.S.A. 44-510f(a)(3) (maximum compensation benefits payable by employer for permanent partial disability is $100,000). Nevertheless, the majority concluded that it was duty bound to follow *Payne* as binding precedent.

The dissenting Board members adopted the *Ward* method and calculated Ballard's award by subtracting his 25% preexisting functional impairment from the $125,000 maximum award, which would equal $93,750. The dissent noted the inequity that would result in this case with the application of *Payne*, as an injured worker who is permanently and totally disabled would receive less compensation than if he was only permanently partially disabled. The dissent also provided an example showing how the *Payne* calculation method penalizes workers with higher wages and weekly benefit rates, pointing out that it reduced Ballard's award by over 50%, but it would be reduced by much less if his weekly benefit rate was lowered from over $500 to $200. The dissent argued that, in either case, the *Payne* methodology is contrary to the intent of K.S.A. 2010 Supp. 44-501(c) because it does not actually reduce the award by the amount of the claimant's preexisting functional impairment.

c. *Application of* Payne *to permanent total disability awards*

For its part, Dondlinger asserts that the Board properly adjusted its method for calculating Ballard's permanent total disability award because permanent total disability claims should be treated differently from permanent partial disability claims, as evidenced by the fact that these claims are found in different statutory provisions and each type of award is subject to a different statutory cap. See K.S.A. 44-510c(a)(1) (compensation for permanent total disabilities); K.S.A. 44-510e(a) (compensation for permanent partial disabilities); K.S.A. 44-510f(a)(1) (capping permanent total disability awards at $125,000); K.S.A. 44-510f(a)(3) (capping permanent partial disability awards at $100,000).

Dondlinger is correct that permanent total disability and permanent partial disability claims are treated differently under the Act in some respects. *Ward* involved a permanent partial disability claim, and thus far, its holding has only been adopted in other permanent partial disability cases. See *Ballard*, 2014 WL 1887654, at *7; *Jamison*, 2014 WL 1887645, at *9. But there appears to be no statutory justification for calculating an award involving preexisting functional impairment differently based on the type of claim involved. When a statute is plain and unambiguous,

> "[o]ur Supreme Court, particularly in the area of workers compensation, has declared that 'an appellate court must give effect only to express statutory language, rather than speculating what the law should or should not be, and that we will not add something to a statute not readily found in it.'" *Ward*, 50 Kan. App. 2d at 289 (quoting *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 610, 214 P.3d 676 [2009]).

When a worker's job duties aggravate or accelerate an existing condition or disease, the injured worker's compensation is statutorily limited to any increase in the amount of his or her functional impairment associated with the aggravation. K.S.A. 2010 Supp. 44-501(c) directs that "[*a*]*ny* award of compensation shall be reduced by the

11

amount of functional impairment determined to be preexisting." (Emphasis added.) Significantly, the *Ward* panel noted that "[a]lthough *Payne* involved a permanent total disability and the present appeal involves a permanent partial disability, the plain language of K.S.A. 44-501(c) does not distinguish between these two types of disabilities." 50 Kan. App. 2d at 292. Moreover, the reasons given for not applying *Payne* in permanent partial disability cases are equally applicable to permanent total disability cases.

First, *Payne* was decided in 2008 and employed the doctrine of operative construction, which required the court to defer to the Board's interpretation of the Act "if there [was] a rational basis for it." 39 Kan. App. 2d 353, Syl. ¶ 1. Now, however, our appellate courts no longer extend deference to an agency's statutory interpretation. See *Douglas*, 296 Kan. at 559 ("In dealing with a statute in a workers compensation appeal, no deference is due the interpretation or construction given the statute by an ALJ or the Board."). Accordingly, cases relying on the doctrine of operative construction are no longer cited for issues involving statutory interpretation in administrative cases because appellate review is now unlimited. See *Ft. Hays St. Univ.*, 290 Kan. at 457.

Second, the express language of K.S.A. 2010 Supp. 44-501(c) requires the award of compensation to be reduced by the percentage of the claimant's preexisting functional impairment. In certain cases, the *Payne* methodology does not accomplish the legislative directive of reducing the award where it is capped at the statutory maximum. This could occur in either a permanent partial disability or a permanent total disability case.

Third, *Payne*'s formula for calculating credit can be inconsistent because the formula is "'based upon a variety of factors, including the average weekly wage and percentage of work disability.'" *Ward*, 50 Kan. App. 2d at 292. For example, the *Payne* methodology may penalize injured workers who earn a higher rate of pay. As noted by the Board's dissent, in some instances, a lower paid injured worker with a preexisting

12

functional impairment would receive nearly all of the $125,000 maximum benefits, while a higher paid worker would receive significantly less.

Fourth and finally, application of the *Payne* methodology in this case leads to an inequitable result by awarding Ballard less for a permanent total disability than he would have received if he had continued to suffer only a permanent partial disability. Such a result is clearly contrary to legislative intent that a totally disabled worker should receive higher benefits than those workers who are only partially disabled. See K.S.A. 44-510f(a)(1) and (a)(3).

In sum, the modification of Ballard's injury to a permanent total disability does not change the manner in which the award should be calculated to reflect his preexisting functional impairment. *Payne* should no longer be used to determine credit for preexisting functional impairment when calculating permanent total disability awards. Therefore, under *Ward*'s methodology, both a permanent total disability and a permanent partial disability workers compensation award must be calculated before any reduction for preexisting functional impairment can be made. Because the Board used *Payne* to calculate Ballard's permanent total disability award, we must reverse and remand with directions that the Board apply K.S.A. 2010 Supp. 44-501(c) to reduce Ballard's $125,000 statutorily capped award by his 25% preexisting functional impairment, consistent with the calculation adopted in *Ward*.

2. *Subrogation credit*

Ballard argues the Board erred in determining that Dondlinger is entitled to a subrogation credit pursuant to K.S.A. 44-504(b) as a result of his third-party settlement recovery.

K.S.A. 44-504(a) provides that injured workers may receive workers compensation benefits from their employers without compromising their right to pursue independent legal actions against third parties potentially liable for the injuries. K.S.A. 44-504(b), however, grants employers subrogation rights for workers compensation benefits paid injured employees as against recoveries those employees might realize in third-party suits by permitting employers to intervene in these actions to protect their subrogation interests. K.S.A. 44-504(b) provides, in relevant part:

> "In the event of recovery from such other person by the injured worker or the dependents or personal representatives of a deceased worker by judgment, settlement or otherwise, the employer shall be subrogated to the extent of the compensation and medical aid provided by the employer to the date of such recovery and shall have a lien therefor against the entire amount of such recovery, excluding any recovery, or portion thereof, determined by a court to be loss of consortium or loss of services to a spouse. The employer shall receive notice of the action, have a right to intervene and may participate in the action. The district court shall determine the extent of participation of the intervenor, including the apportionment of costs and fees. Whenever any judgment in any such action, settlement or recovery otherwise is recovered by the injured worker or the worker's dependents or personal representative prior to the completion of compensation or medical aid payments, the amount of such judgment, settlement or recovery otherwise actually paid and recovered which is in excess of the amount of compensation and medical aid paid to the date of recovery of such judgment, settlement or recovery otherwise shall be credited against future payments of the compensation or medical aid."

Our Supreme Court has recognized that "[t]he intent of K.S.A. 44-504(b) is twofold: (1) to preserve injured workers claims against third-party tortfeasors and (2) to prevent double recoveries by injured workers." *Wishon v. Cossman*, 268 Kan. 99, 105, 991 P.2d 415 (1999). As such, the court went on to hold that "K.S.A. 44-504(b) grants employers subrogation liens on tort recoveries by injured workers only to the extent that a worker's

14

recovery duplicates compensation and medical expenses paid by the employer under the Workers Compensation Act." 268 Kan. at 105-06.

Consistent with his rights under K.S.A. 44-504(a), Ballard filed a claim against the other driver involved in the 2010 automobile accident which caused his injuries. The case was settled for $100,000, the policy limit of the insurance carrier, State Auto. At the time of the settlement, Dondlinger had paid compensation and medical expenses related to Ballard's workers compensation claim totaling $55,848.81. Accordingly, State Auto issued two checks. The first check for $55,848.81 was made out to Ballard, Ballard's attorney, and Dondlinger's insurance carrier as a result of Dondlinger's subrogation lien. The second check for $44,151.19 was made out to Ballard and his attorney. It is undisputed that after deducting attorney fees and expenses, Ballard actually received $29,240.02.

Citing K.S.A. 44-504(b), the Board held that Dondlinger was entitled to a subrogation credit in the amount of $29,240.02 against any workers compensation benefits that accrued after Ballard's tort recovery or would accrue in the future. In other words, the Board ruled that Dondlinger was not required to resume benefit payments until the credited amount was exhausted.

Ballard contends the Board erred in determining that Dondlinger was entitled to a subrogation credit because there was no evidence presented indicating (1) a lien amount, (2) that Dondlinger had asserted its entitlement to a lien, or (3) that Dondlinger had addressed Ballard's loss of consortium or loss of services claims. As such, Ballard claims that Dondlinger has waived its right to any subrogation credit or potential lien.

Ballard's arguments misconstrue the clear distinction between subrogation liens and credits set forth in K.S.A. 44-504(b). The statutory language expressly gives an employer a subrogation interest in and lien "against the entire amount of [the employee]'s

15

recovery" from the third party, except for damages for loss of consortium. See K.S.A. 44-504(b). The lien amount corresponds to "the extent of the compensation and medical aid provided by the employer" to the date of recovery. K.S.A. 44-504(b). It is undisputed that at the time of the settlement of Ballard's third-party claim, Dondlinger had paid compensation and medical expenses in the amount of $55,848.81. Thus, Dondlinger has a lien in this amount against Ballard's settlement recovery. And there is no statutory requirement that a lienholder file a notice of lien to be subrogated to recovery from a third party. Such subrogation and creation of a lien occurs automatically under K.S.A. 44-504(b). *Smith v. Russell*, 274 Kan. 1076, 1086, 58 P.3d 698 (2002). Additionally, Ballard's loss of consortium or loss of services claims are without merit. K.S.A. 44-504(b) gives an employer a subrogation interest in and lien against the entire amount of an employee's recovery from a third party except for damages for loss of consortium "to a spouse." Loss of consortium or loss of service to a spouse must be "determined by a court." K.S.A. 44-504(b). Here, there has been no such determination by a court. Nor is there any evidence in the record to establish that Ballard was married at the time of the 2010 accident. Ballard suggests that his loss of consortium claim relates to his granddaughter who has cancer, but loss of consortium damage results from the deprivation of services, including care and companionship, suffered by the spouse of the physically injured party. See K.S.A. 2014 Supp. 23-2605.

Affirmed in part, reversed in part, and remanded to the Board with directions to calculate Ballard's permanent total disability award consistent with this opinion.

16